[No. G017193. Fourth Dist., Div. Three. Nov. 30, 1995.]

In re ANDREW B. et al., Persons Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
HERBERT B., Defendant and Appellant.

826

827

COUNSEL

Linda M. Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Terry C. Andrus, County Counsel, and Margaret E. Eastman, Deputy County Counsel, for Plaintiff and Respondent.

Harold F. LaFlamme, under appointment by the Court of Appeal, for Minors.

OPINION

**CROSBY, J.—** Is the Court of Appeal compelled, per *Anders* v. *California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396], its progeny, and *People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071], to independently review the record when appointed counsel in a juvenile dependency appeal brought as a matter of statutory right submits a brief that does not argue against the client, but advises the appellate court no issues were found to raise on the client's behalf? *Yes.*

I

The juvenile court terminated dependency jurisdiction over these three siblings on January 17, 1995, and granted their mother sole legal and physical custody. Father Herbert B. exercised his statutory right to appeal; and because he is presently unable to afford counsel, this court appointed an attorney to represent him (Welf. & Inst. Code, § 317). The record was prepared at no cost to the father (Welf. & Inst. Code, § 395). His attorney filed an opening brief setting forth the facts of the case. She did not argue against her client, but advised she found no issue to assert on his behalf and asked this court to independently review the record. (*People* v. *Wende*, *supra*, 25 Cal.3d 436; *In re Joyleaf W.* (1984) 150 Cal.App.3d 865 [198 Cal.Rptr. 114]; *In re Brian B.* (1983) 141 Cal.App.3d 397 [190 Cal.Rptr. 153]; *In re Jesse H.* (1981) 126 Cal.App.3d 1048 [178 Cal.Rptr. 205].)

Pursuant to an invitation by this court, Herbert filed a brief in his own behalf. He raised no issue that could be cognizable on an appeal from a judgment terminating dependency jurisdiction.

Under *Wende* procedures that have long been mainstays of the Court of Appeal throughout the state, we dispensed with full briefing on behalf of the other parties (the Orange County Social Services Agency, the minors, and appellant's former spouse) and with oral argument and independently reviewed the record. We have found no arguable issue.

But the obligation to conduct *Wende* review in dependency appeals is no longer universally accepted by California appellate jurists, and the Supreme Court has agreed to put an end to the current difference of opinion.[1] Because the issue is one of continuing public interest, we publish this decision.

---

[1] *In re Angela G.** (Cal.App.); *In re Sade C.* (1995) 41 Cal.App.4th 1642 [44 Cal.Rptr.2d 509], review granted October 19, 1995 (S048796).

*Reporter's Note: Review granted June 15, 1995 (S046327). Review dismissed December 14, 1995, and cause remanded to Court of Appeal, First Appellate District, Division Four.

## II

We readily admit to an essentially blind acceptance of *Wende* over the years, not only in criminal appeals, but in juvenile dependency, juvenile delinquency, conservatorship, and paternity appeals as well.[2] And the *Wende* process, as practitioners well know, is customarily a streamlined and swift affair: In the overwhelming number of cases where appointed counsel finds no arguable issue and files a *Wende* brief, the Court of Appeal, after independently reviewing the record, also fails to discover any arguable issue. No brief is submitted by the client; the respondent's brief, if any, is a pro forma document; and no oral argument is presented. No brief is submitted by the client; the respondent's brief, if any, is a pro forma document; and no oral argument is presented.

The written opinion affirms the conviction, but consists of only several boilerplate paragraphs.[3] And this court's decision invariably brings an end to the litigation: We have yet to see a petition for hearing to the Supreme Court

---

[2] The opinions are usually unpublished. But the right to *Wende* review in juvenile wardship appeals was recognized in *In re Laylah K.* (1991) 229 Cal.App.3d 1496 [281 Cal.Rptr. 6], *In re Deon D.* (1989) 208 Cal.App.3d 953 [256 Cal.Rptr. 490], and *In re Edward S.* (1982) 133 Cal.App.3d 154 [183 Cal.Rptr. 733]. Similarly, the right to *Wende* review has been accepted in appeals challenging the establishment of a conservatorship (*Conservatorship of Besoyan* (1986) 181 Cal.App.3d 34 [226 Cal.Rptr. 196]; see also *Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1023 [36 Cal.Rptr.2d 40, 884 P.2d 988] (conc. and dis. opn. of Mosk, J.).) and in a paternity action prosecuted by a county (*County of Madera v. Jacobson* (1987) 194 Cal.App.3d 569 [239 Cal.Rptr. 602]).

More published decisions acknowledging the right to *Wende* review exist in the juvenile dependency area. (See, e.g., *In re Rebekah R.* (1994) 27 Cal.App.4th 1638, 1641 [33 Cal.Rptr.2d 265]; *In re Twighla T.* (1992) 4 Cal.App.4th 799, 803 [5 Cal.Rptr.2d 752]; *In re Kristin W.* (1990) 222 Cal.App.3d 234, 249-250 [271 Cal.Rptr. 629]; *In re Adrian O.* (1984) 155 Cal.App.3d 631, 635 [202 Cal.Rptr. 287].)

[3] Literally and figuratively. Not only is the text standard, but with the wonders of the electronic age, a *Wende* opinion is produced on a word processor with a minimum number of keystrokes.

We serendipitiously stumbled upon one decision cut from a different bolt of cloth. Appointed counsel's *Anders* brief was in rhyme, and the court responded in kind. This unique decision is unreported, but as we are not relying on it for our analysis, its reproduction does not seem out of place:

"AND Now, to wit, this April day,
Counsel having had his say,
Anders, Californ-i-a
Would seem to say: 'New trial, no way.'
Forthright counsel I commend
For bringing this appeal to end.
He has served his client well:
A worthless issue would not sell.
Dropping his quixotic quest
Serves his client's interests best.
To press a cause of rank frivolity

after the filing of a *Wende* opinion. Moreover, our independent review of the record and concurrence with appointed counsel's assessment that the appeal lacks merit shields the attorney from an incompetency charge. (*McCoy* v. *Court of Appeals of Wisconsin* (1988) 486 U.S. 429, 439 [100 L.Ed.2d 440, 454-455, 108 S.Ct. 1895]; see Welf. & Inst. Code, § 317.) In short, the *Wende* process results in an opinion that is filed and final much sooner than one in an appeal that proceeds in the more conventional manner.

But attacks on the appellate court's duty of independent review have increased of late, in both frequency and intensity.[4] Extensive research convinces us our previously unquestioned acceptance of *Wende* in the noncriminal contexts listed above is compelled. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) We also believe it is cost effective.

Moreover, the salvos directed against the *Anders/Wende* mandate for independent examination of the record by the reviewing court are misplaced. The duty of independent review is just the small tip of a very large iceberg called "right to counsel." Rejecting an overly broad and contrary statement by our colleagues in another district, we hold that *Anders/Wende* procedures are required simply because there is a right to appointed counsel. This right is not the sole criterion, of course; but without it, the *Anders/Wende* procedures cannot be triggered. In short, so long as attorneys are appointed to

Would not fill this court with jollity.
Though counsel was a courtroom terror,
He could not seed the case with error;
So nothing now could be much grander
Than witnessing his posttrial candor.
Lawyers tend to look facetious,
Pressing issues merely specious.
Frank candor sure beats false bravado,
Defending [name of defendant rhymes with bravado].
This is how I see the moral:
Instead of never-ending quarrel,
A broken record, crying 'foul',
It's sometimes best to throw the towel.
Thus, before the bar of court
This defendant must report.
He shall have to do his time,
For punishment must fit the crime.
And that will have to end this rhyme." (United States v. Rosado (U.S. Dist. Ct. (E.D. Pa.), 1991, No. 90-00457), fns. omitted.)

[4] They appear not only in appellate opinions (see, e.g., *People* v. *Hackett* (1995) 36 Cal.App.4th 1297 [43 Cal.Rptr.2d 219]), but in law review articles (Kelso, *A Report on the California Appellate System* (1994) 45 Hastings L.J. 433, 460-463; Anderson, *Are the American Bar Association's Time Standards Relevant for California Courts of Appeal?* (1993) 27 U.S.F. L.Rev. 301, 336-339) and proposed legislation (Assem. Bill No. 1815 (1995-1996 Reg. Sess.) § 1.)

represent indigents in appeals guaranteed as of right to rich and poor alike, so long as indigent criminal defendants and parents in juvenile dependency proceedings are entitled to the effective assistance of counsel, and so long as those appointed attorneys are required to conduct themselves as advocates, *Anders/Wende* review must follow as a matter of course.

## III

## A

### Analytical Overview

■ The Court of Appeal's duty to independently examine the record when appointed counsel finds no arguable issues in an appeal prosecuted as a matter of statutory right has come to be known in California as *Wende* review; in the rest of the country and in the federal system, the moniker is *Anders* review.[5] But the *Anders/Wende* doctrine did not simply spring forth one day as a fully matured legal concept, à la the goddess in Botticelli's *Birth of Venus*. It was the product of 20 years of jurisprudential Ping-Pong between the California and United States Supreme Courts concerning an indigent appellant's federal constitutional right to appointed counsel on a first appeal, allowed as a matter of statutory right.

Preliminarily, we emphasize that *Anders/Wende* review is invariably limited to appeals where all the following conditions exist: (1) The indigent appellant is represented by appointed counsel on appeal. (2) The respondent is the state or governmental subdivision. (3) The right to appeal is guaranteed by statute and not discretionary with the reviewing court.[6]

To date, all the appellants in United States Supreme Court cases involving *Anders* review have been indigent convicted criminals with a Sixth Amendment right to counsel in the trial court. Although the *Anders* ball started

---

[5]See the attached appendix.

[6]Even though an indigent criminal defendant or an indigent parent in a dependency proceeding has no constitutional right to appointed counsel in a discretionary appeal to a state's highest court or a petition to the United States Supreme Court (*Ross* v. *Moffitt* (1974) 417 U.S. 600 [41 L.Ed.2d 341, 94 S.Ct. 2437]), most states authorize the appointment of counsel at these stages. Nevertheless, when an attorney so appointed cannot find any arguable issue, the reviewing court is not under a federal constitutional obligation to conduct an *Anders/Wende* review. (*Pennsylvania* v. *Finley* (1987) 481 U.S. 551, 559 [95 L.Ed.2d 539, 548, 107 S.Ct. 1990] [The Constitution "require[s] the full panoply of procedural protections . . . (only) to defendants who are in a fundamentally different position—at trial and on first appeal as of right."].) Accordingly, there is no right to *Anders/Wende* review in petitions to the California Supreme Court, where review is discretionary.

Similarly, there is no right to *Anders/Wende* review in petitions for extraordinary relief to the Court of Appeal (see, e.g., *Ronald S.* v. *Superior Court* (1995) 34 Cal.App.4th 1467 [41 Cal.Rptr.2d 139] [juvenile dependency petition for writ of mandate from the referral hearing]).

rolling with the recognition of the Sixth Amendment right (*Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792]), *Anders* review was not developed to vindicate that constitutional guarantee. And we emphatically disagree with the line of authority limiting *Anders/Wende* review solely to appeals where the indigent appellant has a constitutional—as opposed to a statutory—right to counsel in the trial court.[7]

Rather, *Anders* is triggered whenever appointed counsel in a nondiscretionary first appeal determines, after a careful review of the record, that no arguable issue exists. At that point the attorney—obliged to act as an advocate, but with the ethical obligation not to present frivolous issues to the appellate court—can only file an *Anders* brief. (Rule 3-200, Rules Prof. Conduct.) And the decision to affirm the judgment on the basis no arguable issue exists can only be made by the reviewing court *after* it examines the record. (*Anders* v. *California*, *supra*, 386 U.S. at p. 744 [18 L.Ed.2d at p. 498].)

## B

### Historical Overview

Given the roiling debate concerning the wisdom of *Anders* and *Wende*, it is appropriate to begin our analysis with a more comprehensive history of the doctrine and overview of its acceptance in other jurisdictions than is usually found in appellate decisions.[8] As already mentioned, an indigent appellant's right to *Anders/Wende* review is a natural and necessary consequence of his or her right to the appointment of counsel on appeal. Accordingly, we begin our analysis with the decisions establishing the latter right.

The historical detour includes numerous and frequently lengthy excerpts from United States and California Supreme Court decisions. We include them because they best exemplify the factors critical to the decision we reach today. Similarly, the appendix includes brief quotations from various out-of-state decisions to demonstrate the almost universal acceptance of *Anders* review.

A few points must be stressed at the outset: (1) Although *Wende* did not adopt every aspect of the *Anders* decision, its mandate for independent court

---

[7]See, e.g., *People* v. *Hackett*, *supra*, 36 Cal.App.4th 1297.

[8]*People* v. *Hackett*, *supra*, 36 Cal.App.4th at page 1308, for example, asserts, "The only states which have apparently explicitly considered the issue of whether *Anders* requires *the appellate court itself* to conduct an independent review of the record to determine if error exists are Oregon and Florida." (Italics in original.) Our research produced dramatically different results: More than 40 states have considered the issue; and, by our calculations, 37 acknowledge the reviewing court's duty to independently examine the record. (See pt. IV and the appen.)

review of the record in a criminal appeal was compelled by, and did not extend, *Anders*. (See, e.g., *Penson* v. *Ohio* (1988) 488 U.S. 75 [102 L.Ed.2d 300, 109 S.Ct. 346].) ■ The appellate court's duty to independently review the record was a mainstay of California appellate jurisprudence for at least a generation before *Anders*.

## C

### *Precursors to Wende and Anders*

Ulysses Simpson Grant was President and Stanley had only recently located Livingstone in Ujiji when California enacted Penal Code section 1237, guaranteeing every convicted criminal defendant the right to an appeal. But no statute guaranteed the appointment of counsel to prosecute that appeal on behalf of an indigent criminal appellant. And almost 100 years elapsed before the United States Supreme Court determined, "as a matter of constitutional law [that] 'adequate appellate review' is impossible unless counsel has been appointed [for an indigent criminal defendant]." (*Douglas* v. *California* (1963) 372 U.S. 353, 364 [9 L.Ed.2d 811, 818, 83 S.Ct. 814] (dis. opn. of Harlan, J.).)[9]

In the interim—at least in California—the Court of Appeal's general policy was to refuse to appoint counsel for an indigent criminal defendant whose appeal lacked merit. The refusal to make the appointment, however, came only after the appellate panel independently reviewed the record: "[A]ppellate courts, upon application of an indigent defendant who has been convicted of a crime, should either (1) appoint an attorney to represent him on appeal or (2) *make an independent investigation of the record* and determine whether it would be of advantage to the defendant or helpful to the appellate court to have counsel appointed. *This investigation should be made solely by the justices of the appellate courts.* After such investigation, appellate courts should appoint counsel if in their opinion it would be helpful to the defendant or the court, and should deny the appointment of counsel only if in their judgment such appointment would be of no value to either the defendant or the court." (*People* v. *Hyde* (1958) 51 Cal.2d 152, 154 [331 P.2d 42], italics added.) In other words, if an independent examination of the

---

[9]Justice Tom C. Clark was perhaps blunter, and certainly more succinct, when he characterized the majority's holding as an indulgence in a "new fetish for indigency." (*Douglas* v. *California, supra,* 372 U.S. at p. 359 [9 L.Ed.2d at p. 816] (dis. opn. of Clark, J.).)

record convinced the appellate court the appeal lacked merit, then there was no reason to honor an indigent litigant's request for appointed counsel.[10]

Two years later Justice Traynor, who would emerge as the author of this state's most significant decisions concerning appointed counsel, wrote a concurring opinion in which two colleagues joined, suggesting the succinct "by the court" *Hyde* decision "should be expanded to require the appointment of counsel on appeal for all indigent defendants convicted of felonies." (*People* v. *Brown* (1960) 55 Cal.2d 64, 69 [9 Cal.Rptr. 816, 357 P.2d 1072],

[10]In *People* v. *Logan* (1955) 137 Cal.App.2d 331 [290 P.2d 11], Justice Shinn described how the system worked in the Second District: "Upon request for appointment of counsel on the present appeal the court referred the matter to the Los Angeles Bar Association Committee on Criminal Appeals for a report to the court as to possible merit in the appeal. The matter was assigned to two members of the committee who have made written report to the court stating that the record had been examined and that in the opinion of the attorneys it disclosed no meritorious ground of appeal. Defendants were duly so advised and their time to file a brief was substantially extended. No brief has been filed. Such has been the practice of this court for several years. The services of the committee have been willingly rendered and have been of distinct value to the court." (*Id.* at p. 332.)

After noting an indigent had no constitutional or statutory right to the appointment of an attorney on appeal, the court remarked that nevertheless an attorney has been appointed "[w]henever the record discloses a question of error in the trial or other proceeding which counsel could in good conscience urge . . . . Where counsel have not been appointed *the court has made an independent study of the record. We have done so in the present case.*" (137 Cal.App.2d at p. 333, italics added.)

Six years later, Justice Shinn, joined by one of the *Logan* panel members, authored *People* v. *Vigil* (1961) 189 Cal.App.2d 478, 480-481 [11 Cal.Rptr. 319]: "Unlike the constitutional right of indigents to be represented by court-appointed counsel in the trial court, representation on appeal is regarded as discretionary with all reviewing courts, except in rare cases in which appointment of counsel is required by statute. . . . [¶] . . . The general practice has been to appoint counsel in all cases in which representation would serve a useful purpose and to deny counsel in cases of obviously futile appeals. It is our view that the matter should be treated as discretionary as long as the Legislature does not see fit to create the office of public defender for the reviewing courts." The court then described the assistance it received from the local bar association in reviewing trial records to determine whether an appeal would have any merit and added, "In recent years there has been a great increase in the number of in propria persona appeals in criminal cases which, of course, is a matter of right. The cost of preparation of records on appeal has been great. . . . *It is necessary for the court to examine each record in order to properly act upon the request.* [¶] If a record is voluminous counsel may be appointed, by this court, for that reason alone. In other cases counsel are appointed if a doubt exists that the appellant was afforded a fair trial. If appointment of counsel is denied the appellant is notified and given time to file a brief. Some briefs emanating from state prisons are authored by persons of considerable legal ability. But in no case in which appointment of counsel is denied is the appeal dismissed for failure to file a brief. The court, being already familiar with the record, disposes of the appeal on the merits by written opinion, in which the reason for denial of counsel is made clear. Rather than being deprived of a fair hearing, the appellant is given what is probably an excess of consideration. [¶] *We cannot believe that all the courts have been wrong in exercising discretion, based upon an examination of the record, with respect to appointment of counsel on appeal. This court is not in favor of burdening the state with the expense of counsel fees in obviously hopeless cases.*" (*Id.* at pp. 481-482, italics added.)

fn. omitted (conc. opn. of Traynor, J.).) In support of this position, Justice Traynor articulated the constitutional arguments the United States Supreme Court would soon adopt as its own in *Douglas* v. *California, supra,* 372 U.S. 353. But Justice Traynor's principal rationale for the appointment of attorneys to represent indigent appellants was the elimination of the Court of Appeal's "wasteful procedure," i.e., all the preappointment and prebriefing attention to whether the appeal had any merit, as outlined in *People* v. *Logan, supra,* 137 Cal.App.2d 331 (see fn. 10, *ante*), and the promotion of "effective appellate court administration." (*Brown, supra,* 55 Cal.2d at p. 70.)

*Hyde* was expanded out of existence on March 18, 1963. In *Gideon* v. *Wainwright, supra,* 372 U.S. 335, the court announced the Sixth Amendment's right to counsel was fundamental, essential to a fair trial, and compelled the appointment of attorneys to represent indigent criminal defendants in state and federal trial courts. The companion case, *Douglas* v. *California, supra,* 372 U.S. 353, took *Hyde* head on and branded this state's practice of refusing to appoint counsel for indigent criminal appellants where the record failed to reveal any arguable issues as an " 'invidious' . . . discrimination against the indigent." (*Id.* at p. 355 [9 L.Ed.2d at pp. 813-814].)

*Douglas* established the indigent appellant's federal constitutional right to counsel on appeal, based not on a Sixth Amendment right to counsel, but on the Fourteenth Amendment's guarantees of due process and equal protection. *Douglas* held these guarantees are violated when an indigent litigant for whom counsel was appointed in the trial court is denied access to the appellate court on substantially the same terms as a nonindigent litigant in "the *first appeal,* granted as a matter of right to rich and poor alike [, based on a statute]." (372 U.S. at p. 356 [9 L.Ed.2d at p. 814].) And an indigent's access is not substantially equal when the merit of the one appeal he or she has a statutory right to pursue must be established before an appellate attorney is appointed.

The procedural background for *Douglas* was as follows: The Court of Appeal declined to appoint counsel for Douglas and his codefendant, indigents both. They filed in propria persona briefs in the state appellate court and raised a variety of issues, including the reviewing court's refusal to provide free legal representation. The Court of Appeal found "no prejudicial error in not appointing counsel for defendants on the appeal" (*People* v. *Douglas* (1960) 187 Cal.App.2d 802, 812 [10 Cal.Rptr. 188]), noting the presiding justice had " 'gone through the reporter's transcript' " and concluded, " 'It is apparent to me that no good whatever could be served by appointment of counsel.' " (*Id.* at p. 812, fn. 2.)

Six justices of the United States Supreme Court lauded "California's forward treatment of indigents" (*Douglas* v. *California, supra,* 372 U.S. at p. 355 [9 L.Ed.2d at pp. 813-814]), but then held, "where the merits of *the one and only appeal* an indigent has as of [statutory] right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor." (*Id.* at p. 357 [9 L.Ed.2d at p. 814], italics in original.) The *Douglas* majority added that federal courts "must honor [the indigent criminal defendant's] request for counsel regardless of what they think the merits of the case may be; and 'representation [by the appointed attorney] in the role of an advocate is required.' [Citation.] In California, however, once the court has 'gone through' the record and denied counsel, the indigent has no recourse but to prosecute his appeal on his own, as best he can, no matter how meritorious his case may turn out to be. . . . There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination [by the appellate court] that his case is without merit, is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal." (*Id.* at pp. 357-358 [9 L.Ed.2d at pp. 814-815].)

The *Douglas* majority relied on a brief per curiam opinion, *Ellis* v. *United States* (1958) 356 U.S. 674 [2 L.Ed.2d 1060, 78 S.Ct. 974], to jettison *Hyde*. In *Ellis* the Supreme Court determined two individuals convicted of crimes in the District of Columbia should be given leave to appeal in forma pauperis: "Normally, allowance of an appeal should not be denied until an indigent has had adequate representation by counsel. [Citation.] In this case, it appears that the two attorneys appointed by the Court of Appeals performed essentially the role of amici curiae. But representation in the role of an advocate is required. If counsel is convinced, after conscientious investigation, that the appeal is frivolous, of course, he may ask to withdraw on that account. If the court is satisfied that counsel has diligently investigated the possible grounds of appeal, and agrees with counsel's evaluation of the case, then leave to withdraw may be allowed and leave to appeal may be denied. In this case, the Solicitor General concedes, *and after examining the record we agree*, that the issue presented . . . is not one that 'can necessarily be characterized as frivolous.' Accordingly, the judgment of the Court of Appeals is vacated." (*Id.* at p. 675 [2 L.Ed.2d at pp. 1061-1062], italics added.)

The *Douglas* dissenters found no constitutional infirmity in the Court of Appeal's policy of either appointing an attorney to represent the indigent

criminal defendant at the outset or denying a request for appointment after determining there were no meritorious issues. Justice Harlan's dissent stressed the appellate court's decision not to appoint counsel *"can be reached only after an independent investigation of the trial record by the reviewing court. And even if counsel is denied, a full appeal on the merits is accorded to the indigent appellant, together with a statement of the reasons why counsel was not assigned. There is nothing in the present case, or in any other case that has been cited to us, to indicate that the system has resulted in injustice. Quite the contrary, there is every reason to believe that California appellate courts have made a painstaking effort to apply the rule fairly and to live up to the State Supreme Court's mandate."* (*Douglas* v. *California, supra,* 372 U.S. at p. 364 [9 L.Ed.2d at p. 819], italics added (dis. opn. of Harlan, J.).)

*Douglas*'s requirement for the appointment of appellate counsel for all indigent criminal defendants led in due course to a new conundrum: What happens when appellate attorneys appointed as a matter of right for indigent defendants in appeals they had an absolute right by statute to pursue find no arguable issue? *In re Nash* (1964) 61 Cal.2d 491 [39 Cal.Rptr. 205, 393 P.2d 405] was the California Supreme Court's answer to that question.

There, the appointed appellate attorney "studied the record, consulted with [the client], and interviewed [defendant's] trial counsel and the trial court clerk and reporter. He then wrote to the appellate court and to [defendant] stating that in his opinion there were no meritorious grounds of appeal. The appellate court also informed [Nash] of his counsel's determination and advised him that he might file a brief in propria persona. It denied his request for the appointment of other counsel on appeal. Thereafter [Nash] filed an opening brief, the Attorney General filed a reply brief, and [defendant] filed a closing brief. . . . [T]he appeal was submitted without oral argument by either side. The appellate court affirmed the judgment." (61 Cal.2d at p. 492.)

After Nash's petition for certiorari to the United States Supreme Court was denied, he sought habeas review in the California Supreme Court, alleging (1) the appointed attorney's refusal to file a brief and present oral argument denied him effective assistance of counsel and (2) the Court of Appeal's refusal to appoint a different attorney denied him due process. The Supreme Court issued an order to show cause, but ultimately denied the petition.

Justice Traynor, now writing for a unanimous court, embraced without question the notion that *both* appointed counsel and the Court of Appeal

were required to examine the trial record for error: "In *Douglas* v. *State of California*, 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814], the United States Supreme Court held that it was a denial of equal protection of the laws to refuse to appoint counsel to represent an indigent defendant on his appeal from a criminal conviction. [Citation.] We believe that the requirement of the *Douglas* case is met, however, when, as in this case, counsel is appointed to represent the defendant on appeal, thoroughly studies the record, consults with the defendant and trial counsel, and conscientiously concludes that there are no meritorious grounds of appeal. *If thereafter the appellate court is satisfied from its own review of the record* in the light of any points raised by the defendant personally that counsel's assessment of the record is correct, it need not appoint another counsel to represent the defendant on appeal and may properly decide the appeal without oral argument. . . . [¶] Admittedly, [the no-merit letter[11]] does not insure exact equality between indigent defendants and those who have ample funds to retain counsel, for undoubtedly a defendant with sufficient funds could ultimately find counsel to brief and argue even the most frivolous appeal. Exact equality, however, is impossible to attain [citations], and the United States Supreme Court recognized in the *Douglas* case that it is not required; that only 'invidious discrimination' denies equal protection." (*In re Nash, supra*, 61 Cal.2d at pp. 495-496, italics added.)

Moreover, even though a defendant who could afford legal representation might shop around until he or she found an attorney to pursue an appeal, no matter how frivolous, the appellate panel was not required to do the same: "[Defendant] was not subject to invidious discrimination because neither that counsel *nor the District Court of Appeal could discover a meritorious ground of appeal* and the court therefore refused to appoint another counsel to represent him." (61 Cal.2d at p. 496, italics added.)

## D

### *The Anders Decision*

As it turned out, six justices of the United States Supreme Court did not care for *Nash* either. And one of them was Justice Clark, who dissented in *Douglas*. This time he authored the majority opinion in *Anders* v. *California, supra*, 386 U.S. 738 and held, "The constitutional requirement of substantial equality and fair process [for indigent defendants] can only be attained where counsel acts in the role of an active advocate in behalf of his client, as

---

[11]Under *Nash* appointed counsel did not file a brief. Instead, what became known as a "no-merit" letter was submitted to the court. The defendant was then given the opportunity to file a brief on his or her own behalf.

opposed to that of amicus curiae. The no-merit letter and the procedure it triggers do not reach that dignity. . . . [I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; *the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.* . . . [¶] *This requirement . . . would also induce the court to pursue all the more vigorously its own review* because of the ready references not only to the record, but also to the legal authorities as furnished it by counsel. The no-merit letter, on the other hand, affords neither the client nor the court any aid. The former must shift entirely for himself while the court has only the cold record which it must review without the help of an advocate. Moreover, such handling would tend to protect counsel from the constantly increasing charge that he was ineffective and had not handled the case with that diligence to which an indigent defendant is entitled. This procedure will assure penniless defendants the same rights and opportunities on appeal—as nearly as is practicable—as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel."[12] (*Id.* at pp. 744-745 [18 L.Ed.2d at pp. 498-499], italics added.)

■ Some members of this court insist the reference by the *Anders* majority to the reviewing court's obligation to conduct "a full examination of all the proceedings" (*Anders* v. *California, supra,* 386 U.S. 738, 744 [18 L.Ed.2d 493, 498]) meant something other than an independent review of the record. (*In re Kayla G.* (1995) 40 Cal.App.4th 878, 883. [47 Cal.Rptr.2d 86].) But it must be remembered that in *Anders,* all nine justices took for granted the appellate court's duty to "examine[] the record." (*Anders* v. *California, supra,* 386 U.S. at p. 742 [18 L.Ed.2d at p. 497].) The majority, more "concerned with the extent of the duty of a court-appointed appellate counsel to prosecute a first appeal from a criminal conviction, after that attorney has conscientiously determined that there is no merit to the indigent's appeal" (*id.* at p. 739 [18 L.Ed.2d at p. 495]), concluded the lawyer was required to file "a brief referring to anything in the record that might arguably support the appeal" (*id.* at p. 744 [18 L.Ed.2d at p. 498]) in order to provide the appellate panel with "ready references" and "legal authorities" that would "induce the court to pursue all the more vigorously its own review." (*Id.* at p. 745 [18 L.Ed.2d at p. 498].)

---

[12]Frivolous is often used in these cases as a synonym for meritless. In these days of sanctions for frivolous writs and appeals, the terms have been differentiated. (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179]; Code Civ. Proc., § 907.)

Ironically enough, the three dissenting justices in *Anders* were satisfied the no-merit letter provided adequate constitutional protection to an indigent appellant for the same reason, i.e., because the appellate court was under an obligation to conduct " '*its own review* of the record . . . .' " (386 U.S. at p. 746 [18 L.Ed.2d at p. 498], italics added by Stewart, J. (dis. opn. of Stewart, J.) The dissenting justices further disagreed with the majority's decision "to remand [the matter] for a new appeal," noting, "[t]he most that all of the courts and lawyers *who have examined [this] case* have turned up is a [pre-*Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]] claim that the prosecutor commented on his silence at trial . . . [and that] did not raise an 'arguable' issue." (*Id.* at p. 746, fn. * [18 L.Ed.2d at p. 499], italics added (dis. opn. of Stewart, J.).)

And in *Entsminger* v. *Iowa* (1967) 386 U.S. 748 [18 L.Ed.2d 501, 87 S.Ct. 1402], filed the same day as *Anders*, the Supreme Court elaborated on the reviewing court's duty to examine the record. *Entsminger* dealt with an Iowa law that "provide[d] alternate methods of appealing criminal convictions, the first method being an appeal on a 'clerk's transcript' . . . [and the second, denominated a 'plenary appeal,' in which the record also included] the transcript of evidence[,] the briefs and argument of counsel." (*Id.* at p. 749 [18 L.Ed.2d at p. 503].) Harvey Lyle Entsminger, an indigent criminal defendant for whom counsel had been appointed on appeal, requested a plenary appeal. His appointed attorney, "apparently believing that the appeal was without merit, failed to file the entire record" (*id.* at p. 750 [18 L.Ed.2d at p. 503]); and the Iowa Supreme Court affirmed his conviction based on the clerk's transcript alone.

The United States Supreme Court reversed, holding the decision to forego a plenary appeal belonged to the indigent criminal appellant, not the appointed attorney: "Such procedure automatically deprived [defendant] of a full record, briefs, and arguments on the bare election of his appointed counsel, without providing any notice to him . . . . [¶] Since [defendant] admittedly has not received the benefit of a first appeal with a full printed abstract of the record, briefs, and oral argument, as was his right under Iowa law, we do not reach the merits of his conviction here. We have discussed at some length *the responsibility of both the appellate court and appointed counsel representing indigents on appeal in Anders* v. *California,* supra, decided this day, and we need not repeat such here." (386 U.S. at p. 752 [18 L.Ed.2d at p. 504], italics added.)

E

*Post-Anders Decisions in California*

Only a few months after *Anders* and *Entsminger*, Chief Justice Traynor authored *People* v. *Feggans* (1967) 67 Cal.2d 444 [62 Cal.Rptr. 419, 432

P.2d 21], reiterating the *Anders* requirements and holding, "Under *Anders*, regardless of how frivolous an appeal may appear and regardless of how convinced appointed counsel as an advocate may be that there is nothing to advocate, a no-merit letter will not suffice. Counsel must prepare a brief to assist the court in understanding the facts and the legal issues in the case. The brief must set forth a statement of the facts with citations to the transcript, discuss the legal issues with citations of appropriate authority, and argue all issues that are arguable. Moreover, counsel serves both the court and his client by advocating changes in the law if argument can be made supporting change. If counsel concludes that there are no arguable issues and the appeal is frivolous, he may limit his brief to a statement of the facts and applicable law and may ask to withdraw from the case, but he must not argue the case against his client. Counsel is not allowed to withdraw from the case until the court is satisfied that he has discharged his duty to the court and his client to set forth adequately the facts and issues involved. If counsel is allowed to withdraw, defendant must be given an opportunity to present a brief, *and thereafter the court must decide for itself whether the appeal is frivolous.*" (*Id.* at pp. 447-448, italics added.) At this point in *Feggans*, the court cited to the pages in *Anders* where the Supreme Court explained the Court of Appeal affirmed the conviction only "after having examined the record" (*Anders* v. *California, supra,* 386 U.S. at p. 742 [18 L.Ed.2d at p. 497]), as well as the page in *Ellis* where the Supreme Court referred to its own examination of the record (*Ellis* v. *United States, supra,* 356 U.S. at p. 675 [2 L.Ed.2d at pp. 1061-1062]). (*Feggans, supra,* 67 Cal.2d at p. 448.)

In the decade after *Feggans*, the California Supreme Court turned its sights to various issues concerning an indigent appellant's right to effective assistance of appointed counsel. The first decision to "consider[] the problem of incompetent appellate counsel" was *In re Smith* (1970) 3 Cal.3d 192, 196 [90 Cal.Rptr. 1, 474 P.2d 969]. A convicted criminal petitioned the Supreme Court for habeas relief, contending his appointed appellate counsel missed a plethora of arguable issues. A unanimous panel agreed, reiterating that appointed counsel has a duty not to argue against the client and cited the *Feggans* excerpt reproduced in the previous paragraph.[13] (*Id.* at p. 197.)

*Smith* was followed by *People* v. *Rhoden* (1972) 6 Cal.3d 519 [99 Cal.Rptr. 751, 492 P.2d 1143] and *People* v. *Lang* (1974) 11 Cal.3d 134 [113 Cal.Rptr. 9, 520 P.2d 393]. In those decisions the court held the failure of appointed appellate counsel to raise issues that might have justified a reversal of the client's conviction constituted ineffective assistance of counsel and entitled the indigent defendants to appointment of new appellate counsel and reconsideration of their appeals.

---

[13]As will be seen, the duty of an appointed appellate attorney not to argue against the client is pivotal to the one aspect of *Anders* the California Supreme Court would later decline to adopt in *Wende*.

*People* v. *Barton* (1978) 21 Cal.3d 513 [146 Cal.Rptr. 727, 579 P.2d 1043] dealt with an appointed attorney's failure to provide the Court of Appeal with a transcript of the hearings on a denied suppression motion. The inadequate record prevented the appellate court's review of the claimed error and constituted ineffective assistance of counsel.

The unanimous opinion provided a good summary of the law up to this point: "California statutory law permits criminal defendants to appeal as a matter of right from a final judgment of conviction upon a jury verdict in the superior court. (Pen. Code, § 1237, subd. 1.) While such appeals are not mandated by the United States Constitution, the Fourteenth Amendment to the Constitution requires that 'once established, these avenues [of appellate review] must be kept free of unreasoned distinctions that can only impede open and equal access to the courts.' [Citation.] [¶] Among such 'unreasoned distinctions' are those based on the income or assets of a litigant. '[A] State may not grant appellate review in such a way as to discriminate against some convicted defendants on account of their poverty.' (*Douglas* v. *California*[, *supra*,] 372 U.S. 353, 355 [9 L.Ed.2d 811, 813, 83 S.Ct. 814].) Rather, '[i]n all cases the duty of the State is to provide the indigent as adequate and effective an appellate review as that given appellants with funds . . . .' [Citation.] Thus, an indigent who is entitled to appeal is constitutionally entitled to 'a complete and effective appellate review of his conviction . . . .' [Citation.] [¶] The Supreme Court has identified at least two 'basic tools' [citation] that are constitutionally necessary for a 'complete and adequate' appeal by an indigent: (1) a competent attorney on appeal, acting as an advocate on behalf of the indigent (see, e.g., *Douglas* v. *California, supra,* 372 U.S. 353; *Anders* v. *California*[, *supra*,] 386 U.S. 738; *People* v. *Feggans*[, *supra*,] 67 Cal.2d 444); and (2) an appellate record that will permit a meaningful, effective presentation of the indigent's claims (see, e.g., *Griffin* v. *Illinois* (1956) 351 U.S. 12 [100 L.Ed. 891, 76 S.Ct. 585]; [citations])." (*People* v. *Barton, supra,* 21 Cal.3d at pp. 517-518, fn. omitted.)

Two weeks after *Barton,* however, the Court of Appeal cast a somewhat jaundiced eye on the long-standing and previously unquestioned duty of independent judicial review: "We might point out that appellate counsel who eschews manufacturing issues where none exists achieves a real benefit for his client. Here, in order to comply with the mandate of *Anders-Feggans* we carefully considered the record before advising defendant that he could file his own brief and before filing this opinion dismissing the case. In doing so we reviewed not only those portions of the record which counsel discussed but the entire record—an inspection we are not compelled to make when counsel only raises specific issues on appeal. An attorney who cannot

discover an arguable issue thus secures an appellate review of the record which is not necessarily enjoyed by his more feisty counterpart who raises one or two frivolous issues, easily disposed of by the inspection of a few pages of transcript." (*People* v. *McGee* (1978) 82 Cal.App.3d 127, 129 [146 Cal.Rptr. 833].)[14]

F

*The Wende Decision*

The ink was hardly dry on *McGee* when appointed counsel in a criminal appeal pending in Division One of this appellate district presented the court with a brief that "set forth a summary of the proceedings and facts with citations to the transcript, raised no specific issues, and called upon the court to make a thorough review of the entire record to determine for itself whether there were any arguable issues. . . . Counsel also stated that he was not requesting to withdraw but that he would advise defendant that he could move to have counsel relieved if he so desired." (*People* v. *Wende*, *supra*, 25 Cal.3d at p. 438.)

The Attorney General asked the Court of Appeal to strike the brief "because counsel had not moved to withdraw from the case." (25 Cal.3d at p. 438) The defendant did not avail himself of the opportunity to file a brief on his own behalf. The Court of Appeal dismissed the appeal, finding "no reasonably arguable issues . . . . It did not, however, conduct a review of the entire record before doing so." (*Ibid.*)

The California Supreme Court agreed to hear the case to determine "whether the Court of Appeal was required under *Anders* and *Feggans* to

---

[14]Without citation to any authority, one author has asserted, "For the next 12 years California courts of appeal continued to process no-issue briefs according to *Feggans* without the court itself undertaking a review of the entire record before determining that the appeal was frivolous." (Anderson, *Are the American Bar Association's Time Standards Relevant for California Courts of Appeal?*, *supra*, 27 U.S.F. L.Rev. 301, 338.) Given the unambiguous language in *Penson* v. *Ohio* (1988) 488 U.S. 75 [102 L.Ed.2d 300, 109 S.Ct. 346], *Ellis*, *Anders*, and *Feggans* concerning the Court of Appeal's duty to independently examine the record, this statement is certainly suspect. Also, it is flatly contradicted by the above passage from *People* v. *McGee*, *supra*, 82 Cal.App.3d 127 lamenting the burden imposed 11 years earlier in *Feggans* to independently review the record.

Returning to *McGee*, the suggestion that frivolous issues are, for that reason, "easily disposed of by the inspection of a few pages of transcript," while often heard, appears naive. We suspect it is one made, in many cases, by individuals who do not regularly prepare briefs that must respond to frivolous arguments or draft appellate opinions. Also, *McGee*'s failure to acknowledge the duty of independent review preexisted both *Anders* and *Feggans* considerably blunts, in our view, the author's indignation. Under *People* v. *Hyde*, *supra*, 51 Cal.2d 152, an identical review was conducted; the only difference was that it preceded any briefing and its purpose was to determine whether there was a reason to appoint appellate counsel.

make a review of the entire record before determining that the appeal was frivolous."[15] (25 Cal.3d at p. 440.) All but one justice responded with a resounding, *"Yes"*: "The thrust of *Anders* was to increase the protection afforded indigent appellants. *Even the Nash no-merit letter procedure, which was found inadequate, provided for a review of the record by the court.* This review was deemed insufficient because it was done without the aid of a brief by counsel and *because the court itself did not make an express finding that the appeal was frivolous. It is the latter defect which the court appears to have been attempting to remedy by providing that 'the court—not counsel— then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.' (Anders v. California, supra,* 386 U.S. at p. 744 [18 L.Ed.2d at p. 498].) *It is no longer sufficient for a court to review the record to determine the correctness of counsel's assessment of the case.* (See *State* v. *Pascucci* [(1971) 161 Conn. 382 (288 A.2d 408, 410)].) *The court itself must expressly determine whether the appeal is wholly frivolous.* Since the [United States Supreme Court's] concern was with not merely accepting counsel's assessment of the case, it follows that *the determination and concomitant review of the entire record must be made regardless of whether the defendant has availed himself of the opportunity to submit a brief." (Id.* at p. 441, italics added.) The court noted, *"Anders requires the [appellate] court to conduct a review of the entire record whenever appointed counsel submits a brief which raises no specific issues or describes the appeal as frivolous.* This obligation is triggered by the receipt of such a brief from counsel and does not depend on the subsequent receipt of a brief from the defendant personally." *(Id.* at pp. 441-442, italics added.) The *Wende* court also resolved the nettlesome controversy between dismissal and affirmance, settling on affirmance in part because "a question has been raised as to whether it is ever appropriate to dismiss an appeal as frivolous." *(Id.* at p. 443.)

California's Supreme Court Justice William P. Clark, Jr. "concur[red] in the judgment of affirmance, but dissent[ed] from the majority holding that appellant was not accorded his full right to representation by counsel in the Court of Appeal." *(People* v. *Wende, supra,* 25 Cal.3d at p. 443 (conc. and dis. opn. of Clark, J.).) This choice of words is somewhat curious. (See fn. 15, *ante.*) Read literally, Justice Clark's disagreement was with the majority's criticism of appointed counsel. A careful look at the majority opinion, however, discloses no such reproval. Rather, the majority faulted the Court

---

[15] An inevitable aspect of an appellate justice's occupation is to nitpick others' choice of words. The majority's characterization of the issue in *Wende,* as quoted above, was not what *Wende's* appointed attorney asked the court to do: He "called upon the court to make a thorough review of the entire record to determine for itself whether there were any arguable issues." (25 Cal.3d at p. 438.) The lone dissenter in *Wende,* Justice Clark, perceived more than a semantic difference between the two. More of that below.

of Appeal for failing to "conduct a review of the entire record before" concluding the appeal had no merit. (*Id.* at p. 438.) In footnote 3 the *Wende* majority described the procedures the appellate court should follow in the future: "If the court in its review finds an issue which it deems reasonably arguable, *Feggans* makes it clear that the court must appoint new counsel if previous counsel was allowed to withdraw. [Citation.] Where counsel has remained in the case and meets the above-described conditions [i.e., a conscientious review of the record that discloses no arguable issues, a brief that does not describe the appeal as frivolous, and notice to the client that he or she may ask the reviewing court to relieve counsel], the court may, of course, allow [the appointed attorney] to continue. *In any event, the court, upon finding an arguable issue, should inform counsel for both sides and provide them an opportunity to brief and argue the point.*" (*Id.* at p. 442, fn. 3, italics added.)

Although Justice Clark did not specifically refer to that footnote, it was the only possible target for the complaint that his colleagues "now require an appellate court to abandon its traditional role as an adjudicatory body and to enter the appellate arena as an advocate" (*People* v. *Wende, supra,* 25 Cal.3d at pp. 443-444 (conc. and dis. opn of Clark, J.)) and the lament that "[n]either *Anders* . . . nor . . . *Feggans* . . . requires the procedures proposed by today's majority opinion. The precise holding in *Anders* was that a 'no merit' letter by appointed appellate counsel 'was not enough' to satisfy an indigent's constitutional right to representation. Just what is 'enough' is not clear, but the majority of the court in that case certainly did not require an appellate court to function as cocounsel with counsel of record as do the majority in this case." (*Id.* at p. 444.)

As we discuss below, however, the United States Supreme Court has unequivocally rejected Justice Clark's dissenting views. More of that anon. (*Post*, at pp. 848-849.)

Finally, we reiterate that *Wende* did break ranks with *Anders* on one point: the need for an appointed attorney unable to find any arguable issues to formally request to withdraw. The majority concluded neither *Anders* nor *Feggans* required appointed counsel to expressly advise the reviewing court that any appellate issues would be frivolous or to seek to withdraw as counsel of record: "Counsel's inability to find any arguable issues may readily be inferred from his failure to raise any. Nor do we think that it was necessary in this case for counsel to seek leave to withdraw. Counsel did not describe the case as frivolous; if he had, a request to withdraw might have been required under *Anders*, for counsel might be deemed to have disqualified himself by characterizing the appeal as frivolous. So long as counsel has

not disabled himself from effectively representing his client by describing the case as frivolous, no reason appears why he should be required to request to withdraw. Indeed, there may be practical [read that as "time and money saving"] benefits to the court and the client from counsel's remaining on the case, as has been noted by some commentators and courts. [Citations.] We believe that counsel may properly remain in the case so long as he has not described the appeal as frivolous and has informed the defendant that he may request the court to have counsel relieved if he so desires." (25 Cal.3d at p. 442, fn. omitted.) This result was impelled, of course, by *In re Smith, supra,* 3 Cal.3d 192 and the line of cases that held appointed counsel has a duty not to argue against the client.

And so *Wende* review was born.

## G

### Post-Anders Decisions in the United States Supreme Court

The United States Supreme Court has yet to criticize either California's procedures under *Wende* or similar procedures employed in other states. While the California Supreme Court has not had an opportunity to revisit *Wende* in any depth to date, the United States Supreme Court has returned time and again to *Anders*. These excursions have resulted in the Supreme Court's affirmance, in no uncertain terms, of *Anders'* requirement that the reviewing court independently review the record.

For example, in *Jones* v. *Barnes* (1983) 463 U.S. 745 [77 L.Ed.2d 987, 103 S.Ct. 3308], the Supreme Court determined an indigent criminal defendant had no constitutional right to insist appointed appellate counsel raise every issue the client desired to have argued. The decision reversed an opinion by a New York appellate court that, relying on *Anders* v. *California, supra,* 386 U.S. 738, held otherwise.[16]

*McCoy* v. *Court of Appeals of Wisconsin, supra,* 486 U.S. 429 upheld the constitutionality of a Wisconsin rule of appellate procedure that "merely requires [an appointed attorney who has concluded any appellate issues would be without arguable merit and frivolous to] go one step further" (*id.* at p. 442 [100 L.Ed.2d at p. 455]) and file "a brief in which is stated anything in the record that might arguably support the appeal and a discussion of why

---

[16]This argument was a slight variation of the one rejected by the California Supreme Court in *Nash,* where the defendant insisted that if the attorney appointed by the court could find no arguable issue, the appellate panel was required to appoint another attorney to review the record.

the issue lacks merit." (*Id.* at p. 430, fn. 1 [100 L.Ed.2d at p. 448].) Early in the *McCoy* opinion, the majority included the following footnote: "The question presented by Anders' certiorari petition read as follows: [¶] 'May a State appellate court refuse to provide counsel to brief and argue an indigent criminal defendant's first appeal as of right on the basis of a conclusory statement by the appointed attorney on appeal that the case has no merit and that he will file no brief?' [Citation.] [¶] The court gave a negative answer to that question. A 'conclusory statement' by counsel is not sufficient to justify an appellate court's refusal to provide counsel to argue an indigent defendant's appeal. For the court—not counsel—must 'decide whether the [appeal] is wholly frivolous,' [citation], and counsel must provide the court with sufficient guidance to make sure that counsel's appraisal of the case is correct." (*Id.* at p. 439, fn. 11 [100 L.Ed.2d at pp. 453-454].)

A majority of the *McCoy* court also held that although retained and appointed attorneys alike have a duty to withdraw from representing an appellant who has no arguable issues, "[a]ppointed counsel, however, is presented with a dilemma because withdrawal is not possible without leave of court." (486 U.S. at p. 437 [100 L.Ed.2d at p. 452].) The court added, "The principle of substantial equality does, however, require that appointed counsel make the same diligent and thorough evaluation of the case as a retained lawyer before concluding that an appeal is frivolous. . . . Only after such an evaluation has led counsel to [that] conclusion . . . is counsel justified in making a motion to withdraw. This is the central teaching of Anders." (*Id.* at pp. 438-439 [100 L.Ed.2d at p. 453].)

The *McCoy* majority then explained, "In Anders petitioner argued that California's rule allowing counsel to withdraw on the basis of a conclusory statement that the appeal was meritless posed the danger that some counsel might seek to withdraw not because they thought the appeal frivolous but because, seeing themselves as friends of the court, they thought after weighing the probability of success against the time burdens on the court and the attorney if full arguments were presented that it would be best not to pursue the appeal. [Citation to petitioner's brief in *Anders*.] We agreed that the California rule might improperly encourage counsel to consider the burden on the court in determining whether to prosecute an appeal. Wisconsin's rule requiring the attorney to outline why the appeal is frivolous obviously does not pose this danger." (486 U.S. at p. 443 [100 L.Ed.2d at p. 456].) The court also took this opportunity to explain the difference between a traditional brief and an *Anders* brief, as previously noted.

*Penson* v. *Ohio, supra,* 488 U.S. 75, a virtual *Nash/Anders* redux, appeared five months after *McCoy.* There, the attorney appointed to represent an

indigent defendant on his first appeal declined to file a brief. Instead, he advised the court there were no issues of any merit to brief and filed a motion to withdraw as counsel of record. The Ohio appellate court granted the motion to withdraw and, in the same order, advised the indigent defendant he could file his own brief within 30 days and "the court would thereafter 'independently review the record thoroughly to determine whether any error exists requiring reversal or modification of the sentence.' " (*Id.* at p. 78 [102 L.Ed.2d at p. 307].) The defendant filed no brief.

The Ohio Court of Appeals independently reviewed the record, but never appointed another attorney to file an advocate's brief. Nevertheless, that court noted its review of the record exposed " 'several arguable claims' " as well as a "plain error" in a jury instruction that compelled the reversal of one count. (488 U.S. at p. 79 [102 L.Ed.2d at p. 308].) The failure of the appointed attorney to spot these issues did not prejudice defendant, concluded the court, "because the court had thoroughly examined the record and had received the benefit of arguments advanced by counsel for . . . two codefendants." (*Ibid.*)

Eight justices of the Supreme Court agreed the procedure followed by the Ohio appellate panel was unconstitutional: "[T]he Court of Appeals should not have acted on the motion to withdraw before it made its own examination of the record to determine whether counsel's evaluation of the case was sound. This requirement was plainly stated in *Ellis* v. *United States*, 356 U. S. 674. . . , it was repeated in *Anders*, 386 U. S., at 744, and it was reiterated last Term in *McCoy*, 486 U. S., at 442." (*Penson* v. *Ohio, supra*, 488 U.S. at pp. 82-83 [102 L.Ed.2d at p. 310].) The footnote appended to this excerpt added, "*Obviously, a court cannot determine whether counsel is in fact correct in concluding that an appeal is frivolous without itself examining the record for arguable appellate issues.* In granting counsel's motion to withdraw, however, the Ohio Court of Appeals noted that it was deferring its independent review of the record for a later date."[17] (488 U.S. at p. 83, fn. 6 [102 L.Ed.2d at p. 310], italics added.)

*Penson*'s footnote 6 is, essentially, a response to the dissenting portion of Justice Clark's opinion in *Wende*. It will be recalled Justice Clark did not appear to disagree with the notion that a reviewing court may conclude an "appeal is without merit following full and conscientious examination of the

---

[17]These unequivocal statements in *Penson* appear to have been overlooked in at least one law review article: "While the United States Supreme Court has not specifically addressed it, the court's duty to review the record at some point in such proceedings seems almost to be assumed. . . . Penson v. Ohio, 488 U.S. 75, 82, n.5 [102 L.Ed.2d 300, 310, 109 S.Ct. 346] (1988)." (Anderson, *Are the American Bar Association's Time Standards Relevant for California Courts of Appeal?, supra*, 27 U.S.F. L.Rev. at p. 338, fn. 153.)

record." (*People* v. *Wende, supra,* 25 Cal.3d at p. 444 (conc. and dis. opn. of Clark, J.).) But he certainly did not believe *Anders* required the appellate court to use that review to find and identify arguable issues or "impose[] [a] duty on an appellate court to intervene in a defendant's behalf to examine a record for error when counsel has already done so and has submitted a brief similar to that filed in this case. . . . Further, it seems clear the Supreme Court intended that it not be the appellate court's function to search the record to ascertain arguable issues . . . . [Rather,] the appellate court shall respond only to issues raised *to* it, not to issues raised *by* it." (*Id.* at p. 445, italics in original (conc. and dis. opn. of Clark, J.).) In concluding his opinion, Justice Clark reiterated, "Only when counsel is allowed to withdraw, creating a situation where appellant is unrepresented, is defendant to be given an opportunity to present a brief and thereafter the court is to determine whether the appeal is without merit. However, *even then the court responds only to issues raised rather than to issues it seeks out by an independent examination of the record.*" (*Id.* at p. 446, italics added (conc. and dis. opn. of Clark, J.).)

*Penson* v. *Ohio, supra,* 488 U.S. 75, signaled the United States Supreme Court's disagreement with Justice Clark on this point and conclusively demonstrated that *Wende* did not expand *Anders* in this respect, but simply followed the federal high court's mandate that the Court of Appeal must "itself examin[e] the record for arguable appellate issues." (*Id.* at p. 83, fn. 6 [102 L.Ed.2d at p. 310].)

Also, it should be noted the majority in *Penson* rejected a harmless error argument: "[T]he denial of counsel in this case left petitioner completely without representation during the appellate court's actual decisional process. This is quite different from a case in which it is claimed that counsel's performance was ineffective. . . . Because the fundamental importance of the assistance of counsel does not cease as the prosecutorial process moves from the trial to the appellate stage [citation], the presumption of prejudice must extend as well to the denial of counsel on appeal." (488 U.S. at p. 88 [102 L.Ed.2d at p. 314].)

After *Douglas* many states enacted statutes mandating the appointment of counsel for indigent criminal defendants for a variety of postconviction attacks, e.g., discretionary review by a state supreme court or habeas corpus petitions. Do the attorneys appointed to represent indigents at these stages have a similar obligation to file *Anders* briefs when they discern no arguable issues? No, the Supreme Court determined in *Pennsylvania* v. *Finley, supra,* 481 U.S. 551, the final decision we review in this survey.

There, the Supreme Court held, "We think the court below improperly relied on the United States Constitution to extend the Anders procedures to

postconviction proceedings. The holding in Anders was based on the underlying constitutional right to appointed counsel established in Douglas . . . . Relying on 'that equality demanded by the Fourteenth Amendment,' [citation] the Douglas Court held that denial of counsel to indigents on [a] first appeal as of right amounted to unconstitutional discrimination against the poor. In Anders, the Court held that in order to protect the 'constitutional requirement of substantial equality and fair process' set out in Douglas, appointed appellate counsel must follow the procedures described above when a case appears to be frivolous. [Citation.] Of course, Anders did not set down an independent constitutional command that all lawyers, in all proceedings, must follow these particular procedures. Rather, Anders established a prophylactic framework that is relevant when, and only when, a litigant has a previously established constitutional right to counsel. [¶] We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions [citation], and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals." (481 U. S. at pp. 554-555 [95 L.Ed.2d at p. 545].)

*Finley* makes it clear the "previously established constitutional right to counsel" is *not* a Sixth Amendment right to counsel in the trial court. Rather, it is the constitutional right to counsel in the appellate court, as set forth in *Douglas*: "[W]here the merits of *the one and only appeal* an indigent has as of [statutory] right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor." (*Douglas* v. *California, supra*, 372 U.S. at p. 357 [9 L.Ed.2d at p. 814], italics in original.) The point of reference in any *Anders/Wende* discussion, therefore, is not whether the indigent litigant had a constitutional—as opposed to a statutory—right to counsel in the trial court, but whether that indigent litigant could constitutionally be denied the services of an attorney paid by the state in the appellate court. We have not located an opinion from any jurisdiction that has so held. Nor would we expect to. ▮ *Douglas*'s mandate was too clear: The denial of appointed appellate counsel for an indigent in an appeal pursued as a matter of right constitutes invidious discrimination and is not constitutionally tolerated.

## H

### Post-Anders Decisions in Other States

A 1988 law review article reported, "each of the fifty states has provided for a first appeal 'as of right' following a criminal conviction." (Junkin, *The*

*Right to Counsel in "Frivolous" Criminal Appeals: A Reevaluation of the Guarantees of Anders v. California* (1988) 67 Tex. L.Rev. 181, 182.) We assume the author's research is accurate because no fewer than 37 states appear to accept without cavil *Anders*'s requirement that the court with whom that first appeal is filed must independently review the record when counsel confesses an inability to discover an arguable issue. As mentioned in footnote 8, *ante, Hackett's* assertions that only two states "have apparently explicitly considered the issue of whether *Anders* requires *the appellate court itself* to conduct an independent review of the record to determine if error exists" (*People v. Hackett, supra*, 36 Cal.App.4th at p. 1308) and Florida "appears to be the only state Supreme Court on record in any way consistent with *Wende*" (*id.* at p. 1309) are seriously off the mark. An electronic Shepardization of *Anders* yielded close to 1,000 computer screens of case citations. Even accounting for duplicate citations to the official and regional reports and not including the federal cases, we conservatively estimate there are approximately 1,500 references to *Anders* in state opinions. The vast majority adopt and accept *Anders*'s requirements, including that of independent appellate court review. Our distilled research results are reproduced in the attached appendix.

## IV

### *Wende Review and Juvenile Dependency Appeals*

Attempts to resolve the *Anders/Wende* "problem" by citing the lack of constitutional jurisprudence to support the right to appointed counsel in juvenile dependency proceedings misses the point. The generations of litigation leading to recognition of an indigent criminal defendant's constitutional right to counsel at trial and on appeal have not been duplicated in any other context, including juvenile dependency proceedings. And with reason: The due process and fundamental fairness concerns that mandate the appointment of counsel for indigent criminal defendants rarely apply in civil cases. But when these concerns have been implicated in civil cases, the Legislature responded by enacting statutes guaranteeing indigent civil litigants the right to appointed counsel. In these lean-to-grim economic times, it is safe to assume lawmakers would not tolerate such a fisc-impacting choice unless they were convinced it is constitutionally compelled. Nevertheless, the California Supreme Court has found "it unnecessary" to determine if the right to appointed counsel on appeal in dependency cases is constitutionally compelled. Why? Because indigent parents are granted that right by statute.

*(In re Jacqueline H.* (1978) 21 Cal.3d 170, 178 [145 Cal.Rptr. 548, 577 P.2d 683]; see also Welf. & Inst. Code, § 317 et seq.[18])

And this right is only one of several in the current dependency scheme designed to "provide the parents a much more level playing field" in proceedings where the resources of the state have been brought to bear against a family with children. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 255 [19 Cal.Rptr.2d 698, 851 P.2d 1307].)[19] ■ Although there is no federal constitutional right to appeal juvenile dependency matters—just as there is no federal constitutional right to appeal criminal convictions—California has given parents the absolute right to appeal from a variety of rulings, including jurisdictional and dispositional findings and judgments terminating dependency status or parental rights. (Welf. & Inst. Code, § 395; see also *Cynthia D., supra,* at p. 249 and *In re Brittany S.* (1993) 17 Cal.App.4th 1399, 1406, fn. 6 [22 Cal.Rptr.2d 50].)[20] These statutes can only be viewed as the Legislature's recognition that due process and fundamental fairness require no less.

Our research has failed to unearth any appellate decisions or legal literature criticizing the Legislature's decision to provide appointed counsel for indigent parents and the right to appeal in juvenile dependency cases. Nor have we uncovered any suggestion that this state could constitutionally deny free representation to indigent parents who desire to exercise these appellate rights. (*Douglas v. California, supra,* 372 U.S. at p. 355 [9 L.Ed.2d at pp. 813-814].) So, why is there the insistence in some quarters that the duties of the reviewing court and appointed attorneys in juvenile dependency appeals pursued as a matter of right should be less than those in criminal appeals?

---

[18]Statutes concerning the appointment of counsel for parents and guardians in juvenile dependency matters mirror those pertaining to defendants in criminal prosecutions. A parent or guardian who "is presently financially unable to afford and cannot for that reason employ counsel [when] the minor has been placed in out-of-home care, or the petitioning agency is recommending that the minor be placed in out-of-home care" has the absolute right to the appointment of counsel, unless that right is knowingly and intelligently waived. (Welf. & Inst. Code, § 317, subd. (b).) Also, "[a]n appellant [in a juvenile dependency matter who is] unable to afford counsel, shall be provided a free copy of the transcript in any appeal." (Welf. & Inst. Code, § 395.) Rule 39(a) of the California Rules of Court provides, "The rules governing appeals from the superior court in criminal cases are applicable to all appeals from the juvenile court and any appeal in an action under Civil Code section 232 . . . ."

[19]Beginning January 1, 1995, the Legislature has also decreed that "[a]ll parties who are represented by counsel at dependency proceedings shall be entitled to competent counsel." (Welf. & Inst. Code, § 317.5, subd. (a).)

[20]A criminal defendant has only one appeal as a matter of right—after the judgment. Dependency matters generate more than one "first appeal," however. The failure to prosecute a timely appeal at any stage where the right to appeal exists precludes a parent or guardian from raising those issues at the next appellate opportunity. (*In re Megan B.* (1991) 235 Cal.App.3d 942 [1 Cal.Rptr.2d 177].)

■ Whether in the criminal or civil context, attorneys are provided to litigants at state expense only if a fundamental liberty interest is involved. And once that interest has been established and the right to the appointment of counsel on appeal exists, *Anders/Wende* review is compelled when the appointed appellate attorney can find no issue to argue on the client's behalf. Period. As we have mentioned repeatedly, the true target of these attacks is the decision to appoint counsel for certain litigants, not the procedures governing that lawyer's representation. An attorney appointed by the court must "act[] in the role of an active advocate," even if he or she determines the appeal has no merit. (*Anders* v. *California, supra*, 386 U.S. at p. 744 [18 L.Ed.2d at p. 498].) And an advocate appointed by the court has no options. The only procedure that currently fulfills the statutory and constitutional right to effective assistance of counsel and comports with due process principles requires the appointed advocate to submit "a brief referring to anything in the record that might arguably support the appeal." (*Ibid.*; see also *People* v. *Wende, supra*, 25 Cal.3d at p. 439.)

The *Anders/Wende* brief is "[u]nlike the typical advocate's brief . . . which has as its sole purpose the persuasion of the court to grant relief to the defendant[.] [Rather,] the Anders brief is designed to assure the court that the indigent defendant's constitutional rights have not been violated. *To satisfy federal constitutional concerns, an appellate court faces two interrelated tasks as it rules on counsel's motion to withdraw. First, it must satisfy itself that the attorney has provided the client with a diligent and thorough search of the record for any arguable claim that might support the client's appeal.*[21] *Second, it must determine whether counsel has correctly concluded that the appeal is frivolous.*" (*McCoy* v. *Court of Appeals of Wisconsin, supra*, 486 U.S. at p. 442 [100 L.Ed.2d at p. 455], italics added.)

And the Court of Appeal, when presented with an *Anders/Wende* brief, has no option, either. The United States Supreme Court has determined the procedures appointed counsel must follow hinge on the reviewing court's independent examination of the record. No exceptions.

*Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18 [68 L.Ed.2d 640, 101 S.Ct. 2153] does not influence our analysis, much less compel a different result. There, a bare majority of the United States Supreme Court declined to "say that the Constitution requires the appointment of counsel in every parental termination proceeding," but left "the decision whether due

---

[21]In other words, the appellate court makes sure the client received the effective assistance of counsel, thus foreclosing any future writ petition seeking relief on that basis. (See also Welf. & Inst. Code, § 317.5 ["All parties who are represented by counsel at dependency proceedings shall be entitled to competent counsel."].)

process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review." (*Id.* at pp. 31-32 [68 L.Ed.2d at p. 652].) In reaching this conclusion, the court added, "In its Fourteenth Amendment, our Constitution imposes on the States the standards necessary to ensure that judicial proceedings are fundamentally fair. A wise public policy, however, may require that higher standards be adopted than those minimally tolerable under the Constitution. Informed opinion has clearly come to hold that an indigent parent is entitled to the assistance of appointed counsel not only in parental termination proceedings, but also in dependency and neglect proceedings as well. [Citations to various studies.] Most significantly, 33 States and the District of Columbia provide statutorily for the appointment of counsel in termination cases. The Court's opinion today in no way implies that the standards increasingly urged by informed public opinion and now widely followed by the States are other than enlightened and wise." (*Id.* at pp. 33-34 [68 L.Ed.2d at pp. 653-654].)

*Lassiter* arose in the same context as *Gideon* v. *Wainwright, supra,* 372 U.S. 335; i.e., the issue in each was whether an indigent litigant had a federal constitutional right to counsel in the *trial court. Gideon* was immediately followed by *Douglas*, the decision that recognized a federal constitutional right to appointed counsel for indigent criminal defendants in a first appeal; but there is no similar United States Supreme Court counterpart to *Lassiter.* Nor, in our view, is one necessary.

Although the Supreme Court reached contrary conclusions in *Gideon* and *Lassiter* concerning a federal constitutional right to counsel in the trial court for an indigent litigant, *Douglas* controls in juvenile dependency appeals to this court.　██　As discussed above, the constitutional right to appointed counsel in the appellate court recognized in *Douglas* does not depend on a *constitutional* right to appointed counsel at trial; it depends instead on the prohibition against invidious discrimination against indigents in appeals guaranteed as a matter of statutory right to rich and poor alike. The refusal to appoint counsel on appeal to indigent parents in juvenile dependency cases would constitute invidious discrimination against poor litigants and the denial of substantially equal access to appellate review. For that reason, they have a constitutional right to counsel on appeal, per *Douglas*, and a concomitant right to *Anders/Wende* review when appointed counsel determines there are no arguable issues.[22]

The application of *Anders* to juvenile dependency appeals has not generated the attention accorded to the decision in the criminal context. The most

[22]Even if, as some critics suggest, the constitutional right to counsel in the trial court is a prerequisite to the application of *Wende* in the appellate court, the current death knell for *Wende* review in juvenile dependency appeals is, in the words of Mark Twain, premature. Per

recent opinion we have located is *J. K.* v. *Lee County* (Ala.Civ.App. 1995) 668 So.2d 813). Its one-sentence conclusion says it all, in our view: "We extend the procedures set forth in *Anders* v. *California* [including the appellate court's duty of independent review] to civil cases, but limit its use to those civil cases in which an indigent client has a court-appointed attorney as authorized by statute." (*Id.* at p. 816.)

Ohio recognizes the "mandate[] that this court examine the trial court proceedings [in juvenile dependency matters] in order to make an independent determination as to whether the appeal is with or without merit." (*Morris* v. *Lucas County Children Serv. Bd.* (1989) 49 Ohio App.3d 86, 87 [550 N.E.2d 980, 981-982]; see also *In re Egbert Children* (1994) 99 Ohio App.3d 492 [651 N.E.2d 38].) Based on the Pennsylvania Supreme Court's conclusion that the same logic constitutionally compelling the appointment of counsel for indigent criminal defendants applies to indigent parents in involuntary proceedings to terminate parental rights (*In re Adoption of R. I.* (1973) 455 Pa. 29, 34-35 [312 A.2d 601, 603-604, 80 A.L.R.3d 1134]), Pennsylvania also follows *Anders* procedures in juvenile dependency cases and conducts an "independent review of the record." (*In re V. E. and J. E.* (1991) 417 Pa.Super. 68, 84 [611 A.2d 1267, 1275].)

Illinois also applies "the *Anders* procedure" in civil cases where counsel is appointed for indigent appellants: "In discharging our responsibilities, *we*

---

*Lassiter*, the trial court is required to determine whether an indigent parent's right to due process at that stage would be violated if counsel is not appointed. Juvenile courts in California have, to this point, escaped that burden, however, because the appointment of counsel for indigent parents in mandated by statute and the obligation to conduct *Wende* review when appointed appellate counsel finds no arguable issue was routinely accepted by appellate courts.

The current uncertainty in the law created by recent decisions to the contrary would appear to mandate a change in this practice in those appellate districts where the reviewing panels have tied the right to *Wende* review to the constitutional right to counsel in the trial court. Juvenile courts there must now determine whether those parents have a constitutional right to the appointment of counsel in the absence of the statute and, accordingly, the right to *Wende* review. As if our trial courts were not busy enough.

We hasten to add, however, that this burden will not be necessary in Orange County for the time being. The majority in *Kayla G.* and our concurring and dissenting colleague in this case have agreed to maintain the status quo and continue to conduct *Wende* review in dependency appeals until the Supreme Court resolves the issue.

In this respect, *Salas* v. *Cortez* (1979) 24 Cal.3d 22 [154 Cal.Rptr. 529, 593 P.2d 226], recognizing an indigent father's federal and state constitutional right to the appointment of counsel in a paternity action, becomes pertinent. Taking the arguments of *Wende* critics at face value, an indigent father in a paternity action would be entitled to *Wende* review if his appointed attorney could not find any arguable issues simply because he had a constitutional right to trial counsel. But an indigent father appealing the termination of parental rights in a dependency proceeding, who had a statutory right to counsel at trial, would not. There is no logic or justice in such disparate treatment between these indigent appellants.

*have examined the record* and have concluded, as has appellate counsel, that no justiciable issues are presented for review, and that the appeal is without merit." (*Matter of Keller* (1985) 138 Ill.App.3d 746, 747-748 [486 N.E.2d 291, 292, 93 Ill.Dec. 190], italics added.) "CD-Rom" research yields a series of Wisconsin appellate decisions applying *Anders* in juvenile dependency appeals, but the cases are not published.

In 1980, when Georgia followed *Anders* procedures in criminal cases (see appen., *post*, p. 868), it also applied them in dependency appeals. (*Jones* v. *Dept. of Human Resources* (1980) 155 Ga.App. 371 [271 S.E.2d 27].) Similarly, Oregon has applied the same analysis to criminal and juvenile dependency appeals. (*State* v. *Balfour* (1991) 311 Or. 434 [814 P.2d 1069].)

The issue is irrelevant in Washington juvenile delinquency appeals because by statute the appellate court is required to process the appeal on an accelerated basis and review the record without waiting for briefing. (*State* v. *Bastas* (1994) 75 Wn.App. 882 [880 P.2d 1035].) Moreover, Washington does not permit an attorney appointed to represent indigent parents in dependency appeals to withdraw under *Anders*. In a criminal case, the reviewing court knows the defendant was competent to stand trial; but no competency findings are made concerning indigent parents in dependency matters. Because it is possible that an indigent parent is not competent, the reviewing court will not permit appointed counsel to withdraw. (*In re Welfare of Hall* (1983) 99 Wn.2d 842 [664 P.2d 1245].)

Florida accepts *Anders* in juvenile wardship appeals. (*G. K. D.* v. *State* (Fla.Dist.Ct.App. 1980) 391 So.2d 327.) So does Arkansas. The analysis in *Gilliam* v. *State* (1991) 305 Ark. 438 [808 S.W.2d 738], a juvenile wardship case, is particularly apt. There, after explaining juvenile delinquents were entitled to effective assistance of counsel, the Arkansas Supreme Court observed, "Even though the right of counsel in juvenile proceedings is predicated on due process concepts of fairness and is not necessarily as broad as the right to counsel in criminal proceedings, if due process requires that the juvenile be represented at trial and on appeal by effective counsel, then counsel are required to comport with the same procedures set out in *Anders* which were established to assure that there is no denial of the right to counsel on appeal." (*Id.* at p. 441 [808 S.W.2d at p. 740].) The court added, "*Anders* is not perfect, but all efforts to protect an appellant's constitutional rights are flawed in some manner. At best, the procedure can only provide one more safeguard in the final disposition of the case on appeal which, when taken with *our full examination of the record* and counsel's examination of the record . . . helps assure the appellant, whether adult or juvenile, that the 'no merit' appeal is given the thorough attention it must have." (*Id.* at pp. 441-442 [808 S.W.2d at p. 740], italics added.)

In sum, the justification in *People* v. *Placencia* (1992) 9 Cal.App.4th 422 [11 Cal.Rptr.2d 727] for affording *Wende* review in criminal appeals is apt in the dependency context: "[T]here is simply no need to interpose the appellate court into the process [of determining whether there are arguable issues to present on appeal when the appellate attorney is retained], placing it in the position of 'second-guessing' counsel employed by the [party]. After private counsel has appeared for [a party], the state's interest is a narrow one, limited to ensuring compliance with applicable standards of professional responsibility." (*Id.* at p. 428.) But "[t]he situation is vastly different *when the [indigent parent] cannot afford to hire counsel. There, the appellate court becomes the appointing authority, fulfilling the [statutory] requirement of providing the indigent [parent or guardian] with counsel on appeal. In such a case, where appointed counsel submits a brief raising no issues, it is incumbent upon the appellate court to review the record. Making such a review serves to protect the indigent [parent or guardian] which, as Wende pointed out [in the context of criminal cases], is the fundamental purpose of the procedure."* (*Ibid.*, italics added.) We agree.

## V

The discussion in part IV demonstrates that *Wende* review is a necessary adjunct to the right to appointed counsel and, consequently, is compelled in juvenile dependency appeals. But *Wende* review does more than afford due process to indigent litigants and preserve the integrity of a judiciary responsible for the appointment at public expense of attorneys to represent them; it also results in fiscal savings and efficient allocation of scarce public resources.

*Wende*'s critics seem to believe the decision's death knell will precipitate an end to all nonmeritorious or frivolous appeals.[23] Based on our experience in the 13 years this division has been in existence, we doubt the elimination of *Wende* review would result in a statistically recognizable reduction in our staggering caseload.

First, it must be remembered the filing of the form notice of appeal in dependency cases is really nothing more than a clerical act: It is routinely signed by trial counsel or the appellant in propria persona without any real consideration of the potential merits of the appeal. Similarly, because counsel is appointed for indigent appellants before the appellate record is prepared, no meaningful consideration of the potential merits is conducted at

---

[23]But these critics have yet to explain how the unchallenged right to appointed appellate counsel for indigent appellants can exist without the concomitant right to *Anders/Wende* review when that attorney is unable to find an arguable issue. In our view the right to appointed counsel compels the right to *Anders/Wende* review.

this stage, either. In truth, the first real examination of an appeal's potential for success comes months after the appellate ball has started rolling.

Until recently, the conscientious appointed attorney who finds no arguable issue after examining the record has been able to file a *Wende* brief and be assured both that he or she will be shielded from an ineffective assistance of counsel claim and the client will have the benefit of the appellate court's review of the record. Moreover, we must not lose sight of precisely what is included in the record in dependency appeals. When the appeal is taken after the dispositional hearing, the record is typically brief; it usually includes social service agency court reports spanning no more than six months and minutes and transcripts from no more than three or four court hearings. The new procedures for writ review of orders made at referral hearings will limit our examination of the record in most cases to the items pertaining to the selection and implementation (Welf. & Inst. Code, § 366.26) hearing.

Without the ability to file a *Wende* brief, however, it would appear the conscientious appointed attorney has only two choices: He or she can discuss the matter with the client and, with the *client's* written request to the Court of Appeal, ask for a dismissal. Or, the lawyer can adopt the shotgun approach[24] and present the reviewing court with meritless word processor-generated, boilerplate arguments or polemics that charitably may be characterized as silly, but more often than not, are simply offensive.[25] In either case, because the contentions must be addressed, the record will be examined in some detail by the reviewing court. Again, experience has taught

---

[24]The potential for an ineffective assistance of counsel claim looming overhead like Damocles's sword will lead many attorneys, we suspect, to opt for "the more"—rather than "the less"—approach.

[25]Candidly, even with the ability to file a *Wende* brief, this court has, on occasion, been presented with this type of brief. For example, we have been asked to reverse judgments terminating parental rights because (1) the prospective adoptive parent was a paternal relative, leaving the birth father with a legal relationship to the child and depriving the appealing mother of equal protection under the law; (2) a birth father who is not incarcerated may be denied reunification services if he has previously been convicted of causing a child's death through neglect or abuse and the court concludes he has a mental disability that renders him incapable of utilizing reunification services; but a birth father who is currently incarcerated for murdering a child and has a conceded mental disability that renders him incapable of utilizing reunification services may not be denied those services unless the juvenile court makes an additional finding under Welfare and Institutions Code section 361.5, subdivision (e), supported by clear and convincing evidence, that the services would be detrimental to the minor; (3) an arson conviction was not a crime of violence that would justify the termination of a birth father's parental rights to a child born to his underage babysitter, whom he convinced—after impregnating her—to set his vacation home on fire while his children were present, so it would not look like arson and he could collect the insurance proceeds; and (4) the juvenile court's reliance at the selection and implementation hearing on the detriment findings made in the earlier review hearings constituted a prejudicial abuse of the authority to take judicial notice of court records.

those of us who frequently deal with dependency appeals that an independent examination of the record and issuance of a *Wende* opinion is almost always less time consuming than the process of reading, researching, and rejecting manufactured and makeweight issues in a formal opinion.

The elimination of *Wende* review would also significantly increase the cost of processing juvenile dependency appeals. Just about every dependency appeal involves at least three attorneys; and all are usually paid by the taxpayers, albeit at a rate well below the market. Because these lawyers most often were not the attorneys of record below, they must acquaint themselves with the case and necessarily review the entire record, no matter what type of brief will ultimately be submitted. Moreover, the fees for attorneys appointed to represent appellants are also based in part on the number and complexity of the issues they raise, even meritless or frivolous ones.

County counsel represents the Orange County Social Services Agency in all dependency appeals before this court. These public lawyers, when presented with a *Wende* brief, usually respond with a one-page, summary form brief with an unnecessary request for leave to file a supplemental brief should our independent review disclose an arguable issue. We imagine their review of the record is fairly cursory at this point as well: There is certainly no reason for an overworked deputy county counsel to peruse appellate records unless and until the Court of Appeal finds an arguable issue.

As discussed above, however, if *Wende* review is eliminated and the client does not agree to dismiss the appeal, there is every reason to expect the conscientious appellate attorney will file a multi-issue brief. Given the serious consequences in dependency cases, we doubt that county counsel, when served with an appellant's opening brief that includes only nonmeritorious or frivolous issues will put all its eggs in one basket and simply ignore it. Rather, we would expect county counsel to maintain its present practice and file a brief that reiterates the facts in considerable detail and then attempts to respond at length to legal issues that either may be largely irrelevant to those facts or have been consistently rejected by appellate courts.

Once an appeal is filed, an attorney for the dependent minor is invariably appointed at taxpayer expense. This lawyer is frequently also not the one who represented the minor in juvenile court and, like his or her other

---

Another father complained the juvenile court's order terminating jurisdiction and leaving custody decisions to the family law court should be reversed because the mother, an invalid confined to a wheelchair, was for that reasons incapable of adequately parenting the child. The father, however, was the individual who shot the mother in the spine, rendering her a paraplegic.

appellate counterparts, must also review the record. Some of these attorneys file letter briefs, but most submit briefs that include a shorter statement of facts and one or two new spins on the responsive arguments advanced by county counsel.

While we presume attorneys appointed to represent minors conduct a more thorough review of the record than does county counsel when a *Wende* brief is filed, they usually do not file a formal brief. Some submit a one- or two-paragraph letter simply acknowledging appellant's *Wende* brief.

No oral argument is scheduled in a *Wende* appeal when this court, after an independent review of the record, finds no arguable issue. The *Wende* opinion is produced with only a few keystrokes on the word processor and circulated among the panel members, along with the record and, frequently, the assigned justice's summary of its contents. In most dependency appeals where issues, whether arguable or not, have been raised, at least one party requests oral argument. Although these appeals are always accorded their statutory priority, our congested calendars sometimes cause a delay of a month or two before the argument can be heard. And, of course, a formal opinion must be drafted.

All told, the burdens on an appellate court as the result of an *Anders/ Wende* review are not onerous in dependency matters. As Justice Gardner, clearly not a fan of the *Wende* process, wrote with ever characteristic candor, "This whole process of appellate review is not some kind of a WPA project for the continued employment of judges, lawyers, secretaries, clerks, book sellers and office equipment salesmen. Hopefully, we do not engage in a process of setting up straw men and then knocking them down in a search for 'arguable' issues." (*People* v. *Von Staich* (1980) 101 Cal.App.3d 172, 175 [161 Cal.Rptr. 448].)

Justice Gardner reiterated this theme the following year: "No longer will counsel be faced with the compulsion to present marginal issues and thus risk denying his client independent review. When reasonably arguable issues are presented, the client gets the result of an attorney's thorough review of the record, plus the presentation to the court of a reasonably arguable issue. In the alternative, counsel may after that same review throw up his hands and say to the court, 'You look it over, I can't find anything to argue about.' Thus, a clear cut decision can be made which will do justice to the client. A reasonably arguable issue is presented or, in the alternative, the court conducts an independent review. Of course, this may add to the responsibilities of the Courts of Appeal as more nonissue briefs are filed but this is simply a burden those courts must accept under *Wende*." (*People* v. *Johnson* (1981) 123 Cal.App.3d 106, 112 [176 Cal.Rptr. 390].) We agree.

██ Under both the federal and state Constitutions, indigent parents who are appealing as a matter of right after the dispositional hearing or selection and implementation hearing are entitled to counsel. An attorney so appointed who finds no arguable issue is required by *Anders* and *Wende* to file a brief that sets forth the facts of the case and advises the reviewing court no issue was found to argue on the client's behalf. This court is consequently required, again pursuant to *Anders* and *Wende*, to conduct an independent review of the record to assure itself that the indigent appellant received effective assistance of counsel and to determine whether there is, in fact, an arguable issue. We have done so here and found none.

The judgment is affirmed.

Wallin, J., concurred.

**SILLS, P. J.,** Concurring and Dissenting.—While I concur the judgment must be affirmed, I respectfully disagree with the majority on the *Wende* issue. I am afraid Botticelli's Venus is not quite the image that springs to mind when I contemplate the *Wende* doctrine. (See maj. opn., *ante*, at p. 831.) One of Mr. Escher's exasperating staircases to nowhere would be more like it.[1]

I agree with and would sign *In re Kayla G.* (1995) 40 Cal.App.4th 878 [47 Cal.Rptr.2d 86], which another panel of this division is filing this day.[2] Rather than recapitulate the points made by the *Kayla G.* majority, I will confine my observations to one of *Wende*'s unexamined assumptions—that competent appellate lawyers raise any issue which is "arguable." The word "arguable," as in "arguable issue," appears no less than 10 times in *People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071], and it is the "arguable issue" which the appellate court is supposed to be looking for when it examines the "entire record." (See *id.* at p. 438.) The assumption does not withstand critical analysis.[3]

It is amazing the degree to which appellate judges, when they focus on the nuts and bolts of appellate advocacy, regularly advise *against* raising every

---

[1]And for any appellate justice who has ever been faced with the task of performing a *Wende* review on a multivolume appeal, Munch's *The Scream* would probably seem most apt.

[2]As the majority point out, the Supreme Court has accepted review in two juvenile dependency cases involving *Wende* review. Pending that determination, and despite the differences in opinion among the various judges of this division, this court will continue to perform *Wende* reviews in all juvenile dependency cases where *Wende* briefs are filed. Hence, the *Kayla G.* decision and the instant case each affirm juvenile court judgments after a *Wende* review. By processing these cases as if *Wende* applied to juvenile dependency cases, no existing juvenile dependency judgment need be disturbed, regardless of what the high court does with the question.

[3]The arguable issue requirement was lifted by the *Wende* court from *People* v. *Feggans* (1967) 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21]. (See *Wende, supra,* 25 Cal.3d at p.

arguable issue on appeal. The truly effective appellate advocates confine their briefs to arguments which have a genuine chance of *winning*.

In his article *The Wrong Stuff*, Judge Kozinski of the Ninth Circuit lists the various ways in which a lawyer can torpedo his or her own appeal. (See Kozinski, *The Wrong Stuff* (1992) B.Y.U. L. Rev. 325.) Prime among these is to lard the appellant's brief with every arguable issue: "So, if you do things right, you will submit an enormous brief with narrow margins and tiny type . . . . You can lose your appeal before the judge even reads the first word. [¶] But what if you think the judges might nevertheless read your brief and find a winning argument? You go to step two. Having followed step one, you already have a long brief, so you can conveniently bury your winning argument among nine or ten losers." (*Id.* at pp. 326-327.)

Judge Friedman of the federal circuit made the same point, albeit without the rhetorical inversion, in a 1983 article entitled *Winning on Appeal*. (See Friedman, *Winning on Appeal* (1983) 9 No. 3 Litig. 15.) "Do not make every argument possible. A poor argument is easily demolished. Its very presence suggests weakness, on the theory that the lawyer's case cannot be good if he is forced to rely upon unsound contentions." (*Id.* at p. 17.)

---

440.) *Feggans* required the court to consider the impact of a "no-merit" letter in the aftermath of *Anders* v. *California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396], which held that such letters were constitutionally insufficient. In interpreting *Anders*, the *Feggans* court laid down a series of rules for appointed appellate counsel to follow, including "argue all issues that are arguable." (*Feggans, supra*, 67 Cal.2d at p. 447.) While the court did not attempt to justify the "all [arguable] issues" standard, one may gather from the context that the court was referring to issues that had a reasonable chance of changing the result. Thus the *Anders* brief was to "discuss the legal issues," but only argue those that were "arguable," implying the latter were a select subset of the former. (See *ibid.*)

*Feggans* was later cited by *In re Smith* (1970) 3 Cal.3d 192 [90 Cal.Rptr. 1, 474 P.2d 969] to justify concluding that appellate counsel had rendered ineffective assistance where the counsel had failed to raise *any* issues in a case which was "bristling with arguable claims of error." (*Smith, supra*, 3 Cal.3d at pp. 198 & 203.) *Smith*, in turn, was used in *People* v. *Rhoden* (1972) 6 Cal.3d 519 [99 Cal.Rptr. 751, 492 P.2d 1143] to again justify an ineffective assistance holding where counsel had failed to raise any of a number of possible errors which "might have resulted in reversal." (*Rhoden, supra*, 6 Cal.3d at p. 529.) Unfortunately, both *Smith* and *Rhoden* contained dicta to the effect that the reason they had "catalogued" the arguments counsel had not made was to show ineffective assistance, *not* to demonstrate that the arguments *were* meritorious. (See *Smith, supra*, 3 Cal.3d at p. 202; *Rhoden, supra*, 6 Cal.3d at p. 529.) From this dicta, the court in *People* v. *Scobie* (1973) 36 Cal.App.3d 97, 99 [111 Cal.Rptr. 600], would later extrapolate the rule that appellate counsel must raise "arguable-but-unmeritorious" issues on appeal.

The *Wende* arguable issues requirement is thus a case of perfect legal logic leading to a nonsensical result. It took Justice Gardner in *People* v. *Von Staich* (1980) 101 Cal.App.3d 172 [161 Cal.Rptr. 448] to point out the emperor had no clothes: "Hopefully, we do not engage in a process of setting up straw men and then knocking them down in a search for 'arguable' issues." (*Id.* at p. 175.) Unfortunately, that is precisely what *Wende* requires. (*Ibid.*)

Here is Judge Pierce of the Second Circuit: "Commonly, an appellate advocate will identify numerous issues that can be raised on appeal. When the issues are numerous, however, a wise course of action is to divide them into major and minor issues and then to elaborate only upon those that cry out to be addressed." (Pierce, *Appellate Advocacy: Some Reflections From the Bench* (1993) 61 Fordham L. Rev. 829, 835.)

The point is not just recognized by federal appellate judges. Justice Dana of the Supreme Judicial Court of Maine recently wrote: "If you have preserved many points for appeal, cull through them and *limit your appeal to the real gems*. Do not throw in every possible point hoping the Court will latch on to one of them. It is not very complimentary to the people you are trying to persuade and it is possible that we will miss the needle in the haystack. *It is not malpractice to disregard weak points in favor of strong ones and focus all of your guns on two or three errors*." (Dana & Mead, *Effective Trial and Appellate Advocacy: Tips From the Bench* (1995) 10 Me. B.J. 24, 26, italics added.) Amen.

Justice Nelson of the Montana Supreme Court even more recently wrote: "With the possible exception of a death penalty case, there is no benefit to 'shot gunning' the issues for review. You are much better off choosing one, two or, at the most three good, solid issues to appeal than two good ones, three that are so-so and five throw-aways." (Nelson, *How to Be Ready for Your Day in Court* (Sept. 1995) 21 Mont. Law. 10, 11.)

Except for Judge Nelson's possible exception in death penalty cases, there is no reason to distinguish between civil and criminal cases for purposes of effective appellate advocacy. The California Constitution provides that the standard for reversal of a trial court judgment is miscarriage of justice. (Cal. Const., art. VI, § 13.) An appeal in a criminal case is not a hunt for technicalities by which the guilty can beat the system. Indeed, the very reason the California Constitution embodies a miscarriage of justice standard is to *prevent* the guilty from using technicalities to beat the system. (See *People* v. *Cahill* (1993) 5 Cal.4th 478, 532 [20 Cal.Rptr.2d 582, 853 P.2d 1037] (dis. opn. of Mosk, J., quoting Ballot Pamp., Proposed Amends. to Cal. Const. with legislative reasons for and against adoption, Special Statewide Elec. (Oct. 10, 1911)) [" 'The object of this amendment is to enable our courts of last resort to sustain verdicts in criminal cases unless there has been a miscarriage of justice . . . . It is designed to meet the ground of common complaint that criminals escape justice through technicalities.' "].)

At the risk of restating the obvious, the purpose of appellate review in criminal cases is not to afford the opportunity for judges to meditate in print

on arguable arguments for the better edification of the criminal bar. Rather, the right of appeal in criminal cases is to ensure that the accused receives a *fair*—not necessarily a *perfect*—trial and that there is sufficient evidence to sustain any conviction and punishment meted out by the state.

One of the most important ideas in criminal law is the harmless error doctrine—judgments will not be reversed unless the error might have made a real difference. In discussing the harmless error doctrine, Justice Rehnquist wrote for the United States Supreme Court in *Delaware* v. *Van Arsdall* (1986) 475 U.S. 673, 681 [89 L.Ed.2d 674, 684-685, 106 S.Ct. 1431], that among its purposes is to "promote[] public respect for the criminal process by *focusing on the underlying fairness of the trial* rather than on the virtually inevitable presence of immaterial error." (Italics added.) By contrast, *Wende* review presupposes that the purpose of the appellate process is to seek error for its own sake.

The philosophical assumption behind *Wende* is that the Constitution requires the courts to double-check to make sure that *every little technicality is litigated*, regardless of merit or whether it makes any difference. But emphasizing points of law for their own sake, rather than the genuine justice of the matter, only confirms the public's worst suspicions about the judicial system. It subliminally reflects the gamesmanship or "sporting" theory of the criminal law, in which it is considered *good* that a criminal defense counsel try every trick in the book to derail a just conviction. I do not buy it. The goal of the criminal justice system is to punish the guilty and acquit the innocent, not to furnish a playing field for lawyers to parade their skills. (*Delaware* v. *Van Arsdall, supra*, 475 U.S. at p. 681 [89 L.Ed.2d at p. 684] ["the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence"].)

However, even if one did believe that criminal cases are somehow different, and that effective appellate advocacy entailed raising every arguable issue in criminal cases, one still could not make the leap to *Wende* review in juvenile dependency cases. While the criminal justice system litigates discrete events, the juvenile dependency system is *itself* a process which affects an ongoing outcome. It is like a conveyor belt (or flow chart or decision tree, name your metaphor). At virtually every point in the process, the law requires the child to be returned to his or her parents unless certain findings are made.

The court must establish jurisdiction or the child must be returned. Even if there is jurisdiction the court must return the child to the parents unless certain criteria are present. Six months later the child must be returned

unless it would be detrimental to do so. Six months after that the child must be returned unless it would be detrimental to do so. Even if the child is not returned then, the juvenile court can hold out the possibility of a return six months later. Finally, even if the child is not returned after 18 months, parental ties may not be severed if severance would be detrimental.

California's juvenile dependency statutes constitute a remarkable system of checks and balances, facilitated by the availability of counsel for indigent parents. The potential for a miscarriage of justice that will *escape the notice* of any minimally attentive appointed appellate counsel is so low as to be practically nil. And even that small possibility is obviated by the *Anders* requirement that appointed counsel prepare a brief. The very act of reviewing the record and putting the facts down on paper will reveal whether the juvenile court acted incorrectly in making some critical determination against the parent at a point in the process where it could make a difference on appeal.

On top of that, recent legislative changes in juvenile dependency law have undercut any need for *Wende* review. Since January 1, 1995, the issues which are typically critical in a juvenile dependency case—whether the findings made at the 12- or 18-month review are supported by substantial evidence—must be raised by petition for writ from that review. Appeals can only raise issues relating to the selection and implementation hearing pursuant to Welfare and Institutions Code section 366.26 (the .26 hearing). The change means one of two things, neither supportive of *Wende* review.

On the one hand, assuming that *Wende* review was not imposed on the Courts of Appeal to completely waste their time, the new writ-it-or-lose-it procedure means that the *Wende* review should be confined to just the small part of a juvenile record dealing with the .26 hearing. That will, of course, alleviate much of the practical burden imposed by the doctrine on the courts, but create the anomaly of limiting this supposedly crucial review to just a small (and, comparatively speaking, less important) part of the record. If *Wende* review is not necessary for the important "writable" issues in juvenile dependency cases, then it is certainly not necessary for the (usually) less important appealable ones.

On the other hand, if *Wende* review is not limited to just the issues cognizable at .26 hearings, then *Wende* becomes a judicial theater of the absurd. Courts would review portions of files and transcripts with no purpose and where it would make no difference. That really would confirm Justice Gardner's fear that *Wende* review is nothing more than a glorified "WPA" project. (See *People* v. *Von Staich, supra,* 101 Cal.App.3d at p. 175.)

The Court of Appeal exists to examine real cases and controversies, not comb through trial transcripts as if its judges were a group of law professors looking for exam questions or class hypotheticals. Perhaps because of the experience of law students in their first weeks of law school, where some Kingsfieldian type peered over half-glasses and demanded that students cough up *the issue*, lawyers have acquired the wrongheaded notion that courts exist to pontificate on "issues of law." Not so. Courts exist to decide cases.[4]

The proper role of the courts was delineated in *Neary v. Regents of University of California* (1992) 3 Cal.4th 273, 281-282 [10 Cal.Rptr.2d 859, 834 P.2d 119]. "The primary purpose of the public judiciary is 'to afford a forum for the settlement of litigable matters between disputing parties.' . . . We do not resolve abstract legal issues, even when requested to do so. We resolve real disputes between real people." Indeed, it was precisely on the role of the courts where Justice Kennard disagreed with the *Neary* majority. (See *id.* at p. 286 (dis. opn. of Kennard, J.) ["More than just a dispute resolution service . . . ."].) I agree with my colleagues who form the *Kayla G.* majority and with Justice Clark in his dissent in *Wende*. Forcing the appellate courts to search for arguable issues is a perversion of the judicial role.

---

[4]Which is the whole point of the doctrines of mootness and justiciable controversy, as well as the disinclination of courts to render advisory opinions. Unless an issue actually makes a difference, courts should not decide it. They have better things to do than conjure legal questions and then debate them.

APPENDIX

An overwhelming number of states—37, including California—accept the appellate court's duty to independently review the record, per *Anders* v. *California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396] when appointed counsel in a criminal appeal pursued as a matter of right can find no arguable issues.[1] One Mississippi decision has discussed appointed counsel's duties in light of *Anders*, but failed to mention any reviewing court obligations. According to our research, six states (Hawaii, Kansas, Maine, Minnesota, New Jersey, and Tennessee) have not published any decisions concerning *Anders* briefs and the appellate court's duty of independent review. Under the procedures established in Georgia, Idaho, and New Hampshire, it is unclear whether an appellate court in a direct appeal guaranteed by statute will independently review the record. (Although, as noted in footnote 1, the New Hampshire Supreme Court concedes that is what *Anders* requires.) The North Dakota Supreme Court has discussed *Anders*, but the policy it adopted is murky. Oregon is the only state to explicitly reject the notion of independent appellate review.

ALABAMA: In *Peoples* v. *State* (Ala.Crim.App. 1992) 615 So.2d 99, 100 the Court of Criminal Appeals noted, "Following the requirements of *Anders*, we have reviewed the entire record of the trial and the proceedings below . . . ." (See also *Sturdivant* v. *State* (Ala. 1984) 460 So.2d 1210.)

ALASKA: *McCracken* v. *State* (Alaska 1968) 439 P.2d 448, 449 signals the Alaska Supreme Court's acceptance of and adherence to *Anders*, including the duty to "review [] the record."

ARIZONA: *Anders* apparently has had virtually no impact on appellate procedure in Arizona, where case authority has long mandated that the reviewing court independently examine a record for error, even without a brief (see, e.g., *Murdock* v. *Territory* (Ariz. 1912) 123 P. 315), and statutes require the Supreme Court in capital appeals and the Court of Appeal in an appeal as of right to "search the record for error." (*State* v. *Shattuck* (1984) 140 Ariz. 582, [684 P.2d 154, 158, fn. 7]; Ariz.Rev.Stat.Ann. §§ 12-120.21, 13-4031, 13-4035(B).) Nevertheless, the Arizona Supreme Court has reiterated *Anders*'s requirement, that " 'the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.' " (*State* v. *Leon* (1969) 104 Ariz. 297 [451 P.2d 878, 880].)

ARKANSAS: See *Seals* v. *State* (1974) 256 Ark. 11 [505 S.W.2d 202, 204], where the Supreme Court granted an appointed attorney's motion to withdraw and affirmed defendant's conviction, noting, "Pursuant to the *Anders* procedural blueprint we have made a full examination of all the proceedings."

COLORADO: In *People* v. *Marquez* (Colo.Ct.App. 1976) 37 Colo.App. 441 [548 P.2d 939, 940], the appointed attorney followed the *Anders* procedures and the reviewing court stated "carefully examined all of the proceedings in this case and agree with the position taken by counsel for defendant. We now find, upon our examination of the record and the law, that the [appeal] . . . is without merit."

CONNECTICUT: The Supreme Court wrote in *State* v. *Pascucci* (1971) 161 Conn. 382 [288 A.2d 408, 410], "the record discloses that the court only 'accepted' the [brief] of the special public defender. The mere 'acceptance' of the [brief] falls short of compliance with the federal requirement as mandated in the *Anders* case . . . which specifies that 'the court—not counsel . . . after a full examination of all the proceedings . . . decide[s] whether the case is wholly frivolous.' [S]uch a specific judicial determination is required [and where] . . . [t]he

---

[1]We count New Hampshire, whose Supreme Court acknowledge *Anders* imposes this duty, in this number. New Hampshire, however, has determined that *Anders* imposes a minimum standard and has created its own procedure. See *post*.

record gives no indication that the court itself made the review and judicial determination which the *Anders* decision requires . . . [w]e must [] remand the case for such a judicial determination. [¶] . . . [S]o long as an indigent defendant can prosecute an appeal at public expense and without any possible detriment to himself there is nothing to protect the public purse or save the appellate courts from a flood of baseless appeals by indigent defendants except a proper judicial determination as to whether a proposed appeal at public expense may have some merit or is in fact frivolous. It is for this reason that in such cases as this the record should fully disclose that there has been full compliance with the federal requirements specified in [*Anders*]." See also *Paulsen* v. *Manson* (1984) 193 Conn. 333 [476 A.2d 1057], where the Connecticut Supreme Court reversed a conviction because the attorneys appointed for an indigent appellant did not provide a complete record and the Court of Appeal erroneously and prejudicially "permitted both attorneys to withdraw and concluded [defendant's] appeal was frivolous without a full examination of prior proceedings, a portion of which was never made available to the court." (*Id.* at p. 1061, fn. omitted.)

DELAWARE: *Smith* v. *State* (Del. 1968) 248 A.2d 146, 147 advises, "As the final step in our attempt to comply with the requirements of Anders . . . we have read the record."

FLORIDA: In *Jones* v. *State* (Fla.Dist.Ct.App. 1985) 468 So.2d 253, 254, the Second District Court of Appeal discussed the "court's role in reviewing *Anders* briefs [and held, where] an *Anders* brief is filed, we review the arguable points raised by defense counsel. In addition, we examine the record of the proceedings sent to us. Our review includes making a determination of whether the defendant was charged with an offense under Florida law, the trial court had jurisdiction over defendant, and the judgment and sentence conform to the requirements of law." Several years later the Florida Supreme Court affirmed not only the reviewing court's duty to "conduct[] its own examination of the record to determine if the appeal is indeed wholly frivolous" (*In re Order of the First Dist. Ct. of Appeal Regarding Brief Filed in Forrester* v. *State* (Fla. 1990) 556 So.2d 1114, 1115, fn. 1), but also reiterated its authority to "order supplemental briefs in any case before it," even if an *Anders* brief was originally filed. (*Id.* at p. 1117.)

GEORGIA: Georgia originally embraced *Anders*, including the duty of the reviewing "court to examine fully the record and transcript and determine whether the appeal is, in fact, wholly frivolous." (*Bethay* v. *State* (1976) 237 Ga. 625 [229 S.E.2d 406, 407].) Nine years later, in *Huguley* v. *State* (Ga. 1985) 324 S.E.2d 729, 731, the Georgia Supreme Court determined it would no longer grant *Anders* motions to withdraw in direct appeals to that court: "[A] defendant is entitled to review of any claim which might afford him relief. In this case, as in every other in which an Anders motion has been filed, this court has reviewed the entire record and transcript with very little assistance from counsel who is in a far better position to perceive error than is an appellate court looking at a cold record." The majority of a sharply divided Court of Appeals followed *Huguley* and announced *Anders* motions to withdraw would no longer be entertained there as well. Several of the dissenting justices seemed unsure concerning the future of independent review. (*Fields* v. *State* (1988) 189 Ga.App. 532 [376 S.E.2d 912].)

IDAHO: In 1977, the Supreme Court labeled the "procedure outlined in the *Anders* dictum" as "impractical and illogical" and held, "once counsel is appointed to represent an indigent client during appeal on a criminal case, no withdrawal will thereafter be permitted on the basis that the appeal is frivolous or lacks merit." (*State* v. *McKenney* (1977) 98 Idaho 551 [568 P.2d 1213, 1214].) But it is not clear from the decision whether the court was discussing an appeal as of right or a discretionary appeal. In any event, the court took "judicial notice of the files and records of this court and [found] no instance since the issuance of the *Anders* decision wherein this Court has permitted the withdrawal of appellate counsel in a criminal case on the basis the appeal is frivolous and lacks merit. . . . We further determine that if a criminal case

on appeal is wholly frivolous, undoubtedly, less of counsel and the judiciary's time and energy will be expended in directly considering the merits of the case in its regular and due course as contrasted with a fragmented consideration of various motions, the consideration of which necessarily involves a determination of merits." (*Ibid.*)

INDIANA: *Dixon v. State* (1972) 152 Ind.App. 430 [284 N.E.2d 102], overruled on another point in *Music v. State* (1986) 489 N.E.2d 949, preceded *Wende* by seven years and offers a mini-survey of various jurisdictions concerning whether appointed counsel who files an *Anders* brief must also request to withdraw. The Indiana Court of Appeals rejected that requirement for several reasons, not the least of which were the problems of appointing "new counsel should this court find merit to the appeal . . . and the additional cost of new counsel to the taxpayers." (*Id.* at p. 107.)

ILLINOIS: See *People v. House* (1975) 26 Ill.App.3d 330 [325 N.E.2d 69, 70], where the appellate court wrote, "We have examined those points [raised by defendant himself] and the record in this case and find no merit to [them] . . . . Our review of the record persuades us that appellate counsel is correct in his conclusion that this record is free of reversible error. Accordingly, the motion to withdraw is allowed. The conviction is affirmed." (See also *People v. Jones* (1967) 38 Ill.2d 384 [231 N.E.2d 390, 392] [explaining the appellate court's pre-*Anders* review of "the entire record . . . [¶] . . . substantially complied with *Anders*"].)

IOWA: In *Toogood v. Brewer* (Iowa 1971) 187 N.W.2d 748, 750, the court explained Iowa has adopted a rule of appellate procedure "based on the holding in Anders." It provides for notice to the client that the attorney is seeking to withdraw and "that the appeal could be dismissed by the court *after study of the entire record.*" (*Ibid.*, italics added.) Pursuant to the rule, Toogood was advised the "Court has made a full examination of all the proceedings in the trial court, including a full transcript of what was there said and done. After doing so, this Court is satisfied that the appeal is wholly frivolous and without merit." (*Ibid.*)

KENTUCKY: *Fite v. Commonwealth* (Ky.Ct.App. 1971) 469 S.W.2d 357, 358 reaffirms the reviewing court's duty to "read the record and the testimony."

LOUISIANA: This state, unlike California, does require appointed counsel who cannot find any arguable issues to move to withdraw. (*State v. Benjamin* (La.Ct.App. 1990) 573 So.2d 528.) The reviewing court's options are as follows: "If the Court finds, *after an independent review of the record,* that the appeal is wholly frivolous, it may grant the motion and affirm the conviction or trial court judgment. If the Court finds any legal point arguable on the merits, it may either deny the motion and order the court-appointed attorney to file a brief arguing *the legal point(s) identified by the Court,* or grant the motion and appoint substitute appellate counsel." (*Id.* at p. 530, italics added.) The court reiterated that appointed counsel's request to withdraw, accompanied by an *Anders* brief, "will not be acted on *until this court performs a thorough independent review of the record* after providing the appellant an opportunity to file a brief in his or her own behalf. This court's review of the record will consist of (1) a review of the bill of information or indictment to insure the defendant was properly charged; (2) a review of all minute entries to insure the defendant was present at all crucial stages of the proceedings, the jury composition and verdict were correct and the sentence is legal; (3) a review of all pleadings in the record; (4) a review of the jury sheets; and (5) a review of all transcripts to determine if any ruling provides an arguable basis for appeal. Under [Code of Criminal Practice, article] 914.1(D) this Court will order that the appeal record be supplemented with pleadings, minute entries and transcripts when the record filed in this Court is not sufficient to perform this review." (*Id.* at p. 531, italics added.)

MARYLAND: *Beckette v. State* (1976) 31 Md.App. 85 [355 A.2d 515] held, "Under *Anders* . . . and *Tippett v. Director,* 2 Md.App. 465, 235 A.2d 314 (1967) [a juvenile wardship appeal], whenever an appeal is presented to us in such a posture [i.e., where the appointed

attorney has " 'carefully scrutinized the record . . . (and) . . . is unable to discover any reversible error' "], *we are required to examine fully the record of the proceeding*. We have, in the instant case, reviewed the suppression hearing, the *voir dire*, the transcript of the trial, including evidentiary rulings, as well as the trial judge's jury instructions. We have searched the record in its entirety in order to find anything that is 'arguable on the merits' and we discover no such issue. This appeal is, as counsel noted, wholly frivolous." (*Id*. at p. 523, italics added.)

MASSACHUSETTS: In *Commonwealth* v. *Moffett* (1981) 383 Mass. 201 [418 N.E.2d 585, 596], the Supreme Judicial Court of Massachusetts determined an appointed attorney who can find no arguable issue will not be permitted to withdraw solely for that reason. The court adopted "guidelines" for appointed counsel, similar to those in *Wende*. For example, the attorney may advise the court the brief "is filed pursuant to *Anders* . . . . In that event, counsel must so notify the defendant, who will have thirty days to respond should he so choose. Beyond such a preface, counsel should not inject disclaimers of personal belief in the merits of the case or otherwise argue against the defendant's interests." (*Id*. at p. 596.) The briefing is followed by the court's *"independent review of the trial transcript."* (*Ibid*., italics added.)

MICHIGAN: In *People* v. *Jones* (Mich. 1985) 376 N.W.2d 659, the Michigan Supreme Court wrote, *"Upon full examination of all the proceedings,* including the issues raised in the defendant's delayed application for leave to appeal, we believe that the determination made by the Court of Appeals that the defendant's appeal was wholly frivolous was erroneous." (Italics added.) (See also *People* v. *Ramonez* (Mich. 1985) 372 N.W.2d 324, where the Michigan Supreme Court issued a similar order that identified a potentially meritorious issue.) *People* v. *Hoffman* (1969) 382 Mich. 66 [168 N.W.2d 229] provides a unique spin on the issue. There, an attorney appointed to represent an indigent was held in contempt because he maintained his client's appeal was frivolous and refused to file a brief.

MISSISSIPPI: The Mississippi Supreme Court has determined, "The Constitution and laws of the State of Mississippi require more" than does *Anders*. (*Killingsworth* v. *State* (Miss. 1986) 490 So.2d 849, 850.) The standards it established for appointed counsel are spelled out in the decision, but there is no mention of the reviewing court's duty to independently review the record.

MISSOURI: Like Arizona, Missouri by statute requires the Supreme Court to independently review the record in all cases where the defendant was sentenced to death. (Mo.Ann.Stat. § 565.035 (Vernon).) In *State* v. *Begley* (Mo.Ct.App. 1976) 534 S.W.2d 632, the Missouri Court of Appeals remarked, "What has given us difficulty in this case is the state of the record, which we have tried—with minimal success—to call to the attention of the parties. . . . [I]t nevertheless seems to us that basic constitutional requirements, as indicated in *Anders* [] at least require this court to *read* the whole record, especially in view of the fact that defendant's appeal to this court is his 'appeal of right.' " (*Id*. at p. 634.)

MONTANA: In *State* v. *Mason* (1992) 253 Mont. 419 [833 P.2d 1058], the Montana Supreme Court quoted *Anders's* passage concerning the duty of "the court—not counsel" to fully examine the "proceedings" (*id*. at p. 1062) and then announced, "This Court granted appellate counsel's request to withdraw after following the procedures mandated by *Anders*." (*Id*. at p. 1063.)

NEBRASKA: This state has codified *Anders* and follows its mandates. (*State* v. *Kellogg* (1973) 189 Neb. 692 [204 N.W.2d 567].)

NEVADA: Like California, Nevada does not require appointed counsel who files an *Anders* brief to request to withdraw. (*Sanchez* v. *State* (1969) 85 Nev. 95 [450 P.2d 793, 794].) Similarly, Nevada recognizes that "[n]either the district court nor counsel may decide whether

the appeal is frivolous. [Citation.] Only this court can do that." (*Id.* at p. 795.) And that determination comes after an independent review of the record. (*Watkins* v. *State* (1969) 85 Nev. 102 [450 P.2d 795, 796].)

NEW HAMPSHIRE: Last year in *State* v. *Cigic* (N.H. 1994) 639 A.2d 251, the New Hampshire Supreme Court abandoned *Anders* in favor of a policy prohibiting appointed counsel for indigent criminal defendants from seeking to withdraw "on the basis of an appeal's perceived frivolousness" and instead requiring them to file briefs raising "all arguable issues," including, "on rare occasions . . . a frivolous issue." (*Id.* at p. 254.) This rule required the state's high court to "create an exception to New Hampshire Rule of Professional Conduct 3.1 for such conduct[, cautioning], however, that under the procedure we adopt today, appellate counsel is still otherwise absolutely obliged not to deceive or mislead the court." (*Ibid.*) In announcing this rule, the New Hampshire Supreme Court acknowledged "that an independent judicial review of the record [is] guaranteed by *Anders*." (*Id.* at p. 252.)

NEW MEXICO: In *State* v. *Franklin* (1967) 78 N.M. 127 [428 P.2d 982], the New Mexico Supreme Court reversed a conviction because the trial judge (to whom the first appeal as a matter of right was directed) determined the appeal had no merit based on the investigation by appointed counsel instead of a "personal inspection of the files or records . . . . Accordingly, the case must be reversed with directions to vacate the order appealed from [and] to examine the [appeal] and pertinent files and records of the court." (*Id.* at p. 984.)

NEW YORK: *People* v. *Fuce* (N.Y.App.Div. 1986) 498 N.Y.S.2d 1001 reiterates the court's duty to review the record.

NORTH CAROLINA: In *State* v. *Washington* (1994) 116 N.C.App. 318 [447 S.E.2d 799, 802], the North Carolina Court of Appeals wrote, "In accordance with *Anders*, we have fully examined the record to determine whether any issues of arguable merit appear therefrom or whether the appeal is wholly frivolous. We conclude the appeal is wholly frivolous. Furthermore, we have examined the record for possible prejudicial error and have found none. To assist this Court with its review of the record, counsel has addressed defendant's four assignments of error . . . ." The North Carolina Supreme Court agrees: "[D]efendant's counsel . . . stated in his brief that he found no merit in the assignments of error and requested this Court to review the record for any prejudicial error. This is tantamount to a conclusion that the appeal is wholly frivolous. . . . [¶] Pursuant to *Anders*, this *Court must now determine from a full examination of all the proceedings whether the appeal is wholly frivolous. In carrying out this duty, we will review the legal points appearing in the record, transcript, and briefs, not for the purpose of determining their merits (if any) but to determine whether they are wholly frivolous.*" (*State* v. *Kinch* (1985) 314 N.C. 99 [331 S.E.2d 665, 666-667], italics added.)

NORTH DAKOTA: Candidly, the North Dakota Supreme Court's take on *Anders* in *State* v. *Lewis* (N.D. 1980) 291 N.W.2d 735 defies logic. There, both the prosecution and defense "stressed that it was the appellate court's responsibility in this proceeding to examine the record and determine whether or not defendant's appeal was in fact frivolous." (*Id.* at p. 736.) But the Supreme Court, erroneously concluding a criminal defendant's right to appeal in California is not "a matter of right," (*id.* at p. 737, fn. 1) determined, "While we may be in complete agreement with the principles of law recited in the *Anders* decision, we do not think that the procedures applies [*sic*] to this State because under our constitution and statutes an appeal is as a matter of right which eliminates the need for an *Anders* proceeding." (*Id.* at p. 737.) Instead, the Supreme Court announced "the proper procedure to be followed by the courts of this State in cases such as the one before us in which the court-appointed defense counsel believes that the indigent defendant's appeal is without merit is to appoint another attorney to represent the defendant on appeal as soon after the initially appointed attorney makes his opinion as to frivolity known to the court as is practical." (*Id.* at p. 738.) Having

said this, the Supreme Court cautioned monetary sanctions "remain[] available should we determine that an appeal was frivolous after a full review on the merits which was presented with adequate assistance of legal counsel at all stages." (*Id.* at p. 739.)

OHIO: Step (4) of the procedures mandated by the Ohio Court of Appeals when appointed counsel finds no arguable issues provides, "The court then undertakes a full examination of proceedings to decide whether the case is wholly frivolous, *Anders* v. *California, id.*" (*State* v. *Duncan* (Ohio Ct.App. 1978) 385 N.E.2d 323, 324.) Under step (6), the reviewing court may identify "legal points [that] are 'arguable on the merits' " and ensure the appellant has counsel to assist in briefing them." (*Ibid.*)

OKLAHOMA: It does not appear the appointed counsel who could not find any arguable issues moved to withdraw in *Mapp* v. *Oklahoma* (Okla. 1976) 557 P.2d 912; and the Oklahoma Court of Criminal Appeals treated the matter much as the Court of Appeal does in this state and affirmed the defendant's conviction, "[a]fter a thorough review of the record and transcript of the case." (*Id.* at p. 913.)

OREGON: Oregon is the only state to unequivocally hold that "review of the entire record by the appellate court in the direct appeal is not required." (*State* v. *Balfour* (Ore. 1991) 814 P.2d 1069, 1081.) *Balfour* included a thorough discussion of the pertinent United States Supreme Court decisions and candidly conceded that court has consistently "reaffirmed the constitutional necessity of the procedures first described in *Anders.*" (*Id.* at p. 1077.) Somewhat ruefully, the *Balfour* court also noted Oregon's first significant post-*Anders* decision (*State* v. *Horine* (Ore.Ct.App. 1983) 669 P.2d 797, 806), where the Court of Appeals announced it would "not search the record for error any more than we do in other criminal appeals," proved to be a poor prognosticator of trends to come: "*Penson* [v. *Ohio*] made it clear that the tactical retreat from *Anders* anticipated by the Oregon Court of Appeals in *State* v. *Horine* had instead become an aggressive holding action." (*Balfour, supra,* at p. 1076.) Nevertheless, the *Balfour* court concluded independent review of the record by the appellate court was unnecessary in every direct appeal where appointed counsel could find no arguable issues because, in those cases where nonfrivolous issues actually exist, they may eventually be addressed via a petition for habeas corpus relief based on ineffective assistance of appellate counsel. (*Id.* at p. 1081.)

PENNSYLVANIA: *Commonwealth* v. *McClendon* (1981) 495 Pa. 467 [434 A.2d 1185] is one in an unbroken line of Pennsylvania authority applying and discussing the *Anders* mandates. After reiterating "the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous" (*id.* at p. 1187), the court explained "[t]he core of *Anders'* reasoning" as follows: "[W]here an accused is entitled to a counselled appellate review, that right should not be denied or diminished solely because of indigency. However, *Anders* does not require that counsel be forced to pursue a wholly frivolous appeal just because his client is indigent. The major thrust of *Anders* was to assure a careful assessment of any available claims that an indigent appellant might have. That end is achieved by requiring counsel to conduct an exhaustive examination of the record and *by also placing the responsibility on the reviewing court to make an independent determination of the merit of the appeal.*" (*Id.* at p. 1188, italics added.)

RHODE ISLAND: *State* v. *Desroches* (1972) 110 R.I. 497 [293 A.2d 913] is the Rhode Island Supreme Court's affirmation of the reviewing court's duty to independently review the record.

SOUTH CAROLINA: In *Watt* v. *State* (1972) 259 S.C. 116 [190 S.E.2d 747, 748], the South Carolina Supreme Court granted appointed counsel's request to withdraw and dismissed the appeal, noting, "The requirements set forth in Anders have been complied with. After a full

examination of the record, we conclude that the appeal is manifestly without merit and wholly frivolous."

SOUTH DAKOTA: *Loop* v. *Solem* (S.D. 1986) 398 N.W.2d 140, 143 is the South Dakota Supreme Court decision adopting *Anders* and the duty to independently review the record.

TEXAS: In *Johnson* v. *State* (Tex.Crim.App. 1994) 885 S.W.2d 641, the Court of Criminal Appeals cited *McCoy* v. *Court of Appeals* (1988) 486 U.S. 429 [100 L.Ed.2d 440, 108 S.Ct. 1895] and *Penson* v. *Ohio* (1988) 488 U.S. 75 and explained the reviewing court's duties when appointed counsel filed an *Anders* motion to withdraw as follows: "[First] we examine the attorney's brief for compliance with the rules as we have articulated them today. [Citation.] The second task requires, in effect, that this court brief the appeal itself, because we must conduct 'a full examination of all the proceedings' to determine if the appeal is wholly frivolous." (*Id.* at p. 647; see also *High* v. *State* (Tex.Crim.App. 1978) 573 S.W.2d 807, 811 ["[I]n the last analysis, it is up to the court, not counsel, 'after a full examination of all proceedings, to decide whether the case is wholly frivolous.' [An *Anders* brief] . . . aids the reviewing court in studying a cold record."].)

UTAH: In *State* v. *Allgood* (1972) 28 Utah 2d 119 [499 P.2d 269], the Utah Supreme Court followed *Anders* and dismissed the appeal "[a]fter a review of the record and reference to the legal authorities cited." Almost a decade later, in *State* v. *Clayton* (Utah 1981) 639 P.2d 168, 170, the Utah Supreme Court broke the *Anders* requirements into eight steps. The sixth provided for the "court—not counsel . . . after a full examination of all the proceedings, to decide whether the case is wholly frivolous." The court then added an interesting element: "With respect to steps 6, 7, and 8, this Court will grant counsel permission to withdraw and will affirm the conviction (rather than dismiss the appeal) in criminal appeals that are found to be wholly frivolous, but will do so only when the Court is unanimous in that decision. Otherwise, the appeal must be pursued on the merits." (*Ibid.*)

VERMONT: The appellate court in *In re Mossey* (Vt. 1971) 274 A.2d 473, 475-476, "reviewed the entire record within the precept of Anders," denied the attorney's motion to withdraw, and affirmed defendant's conviction.

VIRGINIA: In *Kuzminski* v. *Commonwealth* (1989) 8 Va.App. 106 [378 S.E.2d 632], the appellate panel first determined whether the brief filed by appointed counsel, in conjunction with his request to withdraw, "satisfies the *Anders* requirements" (*id.* at p. 633) and then "examined all of the proceedings in this case and [concluded] . . . there is nothing in the record that might arguably support this appeal." (*Ibid.*) The court then authorized counsel's withdrawal and dismissed the appeal.

WASHINGTON: The Washington Supreme Court adopted *Anders* in *State* v. *Theobald* (Wash. 1970) 470 P.2d 188. The more recent *State* v. *Pollard* (1992) 66 Wash.App. 779 [834 P.2d 51] is significant in several respects. There, the Court of Appeals, after "reviewing the record to determine whether the issues raised by counsel were wholly frivolous, [concluded most were, but] . . . noted an additional issue that might not be frivolous." (*Id.* at p. 53.) The reviewing court deferred a ruling on appointed counsel's request to withdraw and asked for supplemental briefing. Oral argument was conducted; and, ultimately, the court determined one issue had merit, reversed the conviction, and remanded for a new restitution hearing. In a footnote, the court explained, "Although the panel of this court reviewing the previous challenge to the sufficiency of the evidence [in the original *Anders* brief] as to restitution considered the issue wholly frivolous, we review that issue anew here because of the special obligations imposed by the *Anders* process. *This court has an independent obligation to ascertain to its satisfaction that there is no merit to the appeal.*" (*Id.* at p. 54, fn. 3, italics added.) The Court of Appeals also rejected an argument by the "State [] that *Anders* . . . requires appellate counsel, after having identified potential arguments a client might advance, to analyze those arguments and discuss how they are wholly without merit." (*Id.* at p. 55.)

WEST VIRGINIA: The West Virginia Supreme Court of Appeals, in *Turner* v. *Haynes* (W.Va. 1978) 245 S.E.2d 629, 631, wrote, "Applying the law of *Anders* . . . to which we adhere . . . [i]t is not [appointed] counsel's prerogative to determine finally the merits of an appeal, but, as directed in *Anders*, 'the court—not counsel . . . decide[s] whether the case is wholly frivolous.'" This is accomplished by the court's independent examination of the record. (*Rhodes* v. *Leverette* (W.Va. 1977) 239 S.E.2d 136, 139, fn. 1.)

WISCONSIN: In *Cleghorn* v. *State* (1972) 155 Wis.2d 466 [98 N.W.2d 577, 581], the Supreme Court not only accepted its duty of independent review, but acknowledged that duty would require the consideration of potentially meritorious issues it may discover in that review: "[T]he court will make an independent review of the record, consider all issues raised *and found*, and may in a proper case summarily decide the appeal, as well as dismiss counsel." (Italics added.)

WYOMING: *Trujillo* v. *State* (Wyo. 1977) 565 P.2d 1246, 1247 recognized *Anders*'s requirement for independent review: "Counsel for appellant advises that he has carefully reviewed the record and evidence and finds no basis or other grounds to support appellant's appeal. This court has also made such an examination and is in agreement therewith."